## THE STATE OF KANSAS v. CHAMBERLAIN HOEL.

### No. 15,448.   (94 Pac. 267.)

#### SYLLABUS BY THE COURT.

1. INFORMATION — *Perjury.*  The defendant was convicted of perjury.  He was charged with having witnessed the commission of a murder, and when called as a witness by the state, upon the trial of the supposed murderer, denied having been present at the homicide or having seen the act committed.  The killing was done by a blow with a club.  The information, after reciting a history of the transaction, contains averments which read: "And all of said things did occur in the immediate presence of said Chamberlain Hoel, and he, the said Chamberlain Hoel, did witness all of said acts, and did have full knowledge thereof, . . . and that the testimony so given by said Chamberlain Hoel, as aforesaid, was false, and was by him at the time known to be false."  These sufficiently charge that he saw the crime committed and remembered it when testifying as a witness.

2. —— *Redundant and Irrelevant Recitals.*  Recitals in an information charging perjury which merely describe the transaction about which the alleged false testimony was given, and the hearing or trial upon which the accused testified, will not, even if unnecessarily full, make the information defective, and it is not error to deny a motion to strike out such recitals as redundant and irrelevant.

3. INSTRUCTIONS — *Substance of Those Requested Given.*  The refusal of the district court to give instructions to the jury as requested by the defendant will not be deemed erroneous when other instructions given are substantially the same as those refused.

4. PERJURY — *Materiality of Alleged False Testimony.*  In a prosecution for the crime of perjury the evidence charged to be false will be regarded as material if it tended to prove or disprove a material fact involved in the trial where the alleged perjury was committed, regardless of the effect which such testimony may have had in the case.

5. —— *Proof of Motive.*  Whether or not a defendant charged with a crime had an adequate motive for the commission of the act of which he is accused is a matter of evidence to be considered by the jury, and when the evidence is sufficient without proof of a motive to satisfy the jury beyond a reasonable doubt of the defendant's guilt no motive need be shown.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed February 8, 1908. Affirmed.

*Fred S. Jackson,* attorney-general, *Ed J. Fleming,* county attorney, and *L. H. Webb,* for The State.

*Hackney & Lafferty,* and *O. P. Fuller,* for appellant.

The opinion of the court was delivered by

GRAVES, J.: Chamberlain Hoel was convicted in the district court of Cowley county of perjury, and appeals to this court. His first assignment of error is the refusal of the court to quash the information. The state claims that Amasa Thomas and Charles McEwen, while intoxicated, quarreled, and Thomas struck McEwen with a club and killed him. Thomas was charged with the homicide, and upon his preliminary examination therefor Chamberlain Hoel was sworn as a witness. He testified that he was not present at the time McEwen was killed, and did not see the transaction.

Thomas was bound over, and when he was tried in the district court Hoel was again used as a witness for the state and testified practically the same as on the preliminary examination. After the trial and conviction of Thomas the state filed an information against Hoel. It charges perjury, both at the preliminary examination and in the district court. He was convicted upon the count relating to the preliminary examination only. The information, after its introductory and descriptive averments, alleges:

"And all of said things did occur in the immediate presence of said Chamberlain Hoel, and he, the said Chamberlain Hoel, did witness all of said acts, and did have full knowledge thereof, . . . and that the testimony so given by said Chamberlain Hoel, as aforesaid, was false, and was by him at the time known to be false."

The appellant insists that the essential elements of the perjury here charged are that Hoel saw the fatal

blow given to McEwen, and, at the time he testified, remembered having seen it; that the information, not having an allegation charging these facts, is fatally defective, and the motion to quash should have been allowed.

We are unable to agree with this contention. The information states that the acts occurred in the immediate presence of the appellant; that he witnessed and had full knowledge thereof; that his denial as a witness was false, and was by him then known to be false. This is sufficient. To witness is to see. (Webster's Intern. Dict.) Unless he remembered the act he could not have known that his statement was false. The motion to quash was properly denied.

It is also claimed in this assignment of error that the court erred in refusing to strike out a part of the introductory statements in the information. These recitals give a history of the murder, the arrest and the arraignment of the accused at the preliminary examination, and were evidently stated for the purpose of explaining how the trial originated in which Hoel committed the perjury charged against him. The language objected to was probably not essential, but we are unable to see wherein it was prejudicial to the rights of the defendant, and cannot say that the court erred in denying the motion to strike it out.

It is further urged that the court erred in refusing to direct a verdict of acquittal at the close of the evidence for the state, as requested by the defendant, and also in refusing to give to the jury instructions which the defendant requested, and in giving instructions to which the defendant objected. These three assignments are discussed by the appellant together, and we will so consider them.

When the motion requesting the court to direct a verdict of acquittal was presented the evidence was substantially the same as when the case was submitted to the jury. It was amply sufficient to justify con-

viction, and the court could not do otherwise than deny the request.

The defendant covered every possible phase of the case beneficial to himself by requests for special instructions. The principal point relied upon was that the defendant, on account of extreme intoxication, either did not see the homicide committed, or, if he did, the event had faded from his memory when he testified as a witness, and the facts were then related by him as he remembered them. The instructions given by the court, while not in the same language used in those requested, fully present, as we think, the defendant's theory. In the instructions given the court said:

"Before you can convict the defendant in this case you must find from the evidence that he wilfully and corruptly swore falsely, as alleged in the information, and if you find that in giving the testimony complained of, if he gave any such testimony, he honestly testified to the facts as he remembered them, without any intention to swear falsely, you cannot convict the defendant, even though you find from the evidence that his testimony was false."

"The court instructs the jury that if you believe from the evidence that the defendant was present at the time of the killing of Charles McEwen by Amasa Thomas, and that he was very drunk, then you may take into consideration that fact in arriving at the fact whether or not the defendant was in a condition to see, hear, and retain after he got sober, as to what took place at the killing."

"The court instructs the jury that, before you can find the defendant guilty in this case, you must believe from the evidence that the defendant falsely testified, as alleged, and that he knowingly and intentionally so testified falsely."

The direct evidence as to whether the defendant actually saw the blow struck or not consists of the testimony of witnesses who saw the blow given and who testify that the defendant was then standing near the parties, with his face turned in that direction. The

court, apparently acting upon the theory that, before the jury could find from this evidence that the defendant actually saw the blow administered, they must infer it, and that the rule relating to circumstantial evidence applied, gave an instruction which reads:

"The state may properly rely on what is called circumstantial evidence in order to show what knowledge the defendant had of the transaction claimed to have resulted in the death of said McEwen. . . . But before you would be warranted in finding that the defendant saw any particular part of the transaction, where circumstantial evidence alone is relied upon to support such a conclusion, the circumstances relied upon for such purposes must be proved to your satisfaction beyond a reasonable doubt from all the evidence in the case, and must be such as to satisfy you beyond a reasonable doubt that the defendant saw such portion of such transaction, must be consistent with the fact that he saw it, and must be inconsistent with any reasonable theory that he did not see it. And in determining whether or not the defendant saw any particular portion of the alleged transaction resulting in the death of said McEwen, where circumstantial evidence alone is relied upon to prove that he did see any particular portion of the transaction, if the facts and circumstances relied upon for such purpose are consistent with any reasonable theory that he did not see it the law would require you to determine that he did not see it."

The other instructions given by the court fully and fairly cover the case, while these call the attention of the jury particularly to the points deemed important by the defendant.

In argument it is urged that, before a conviction for perjury can be sustained, two or more witnesses must have been produced whose testimony showed that the evidence given by the defendant, and charged to be false, was untrue, or at least one witness must so testify and his testimony be satisfactorily corroborated. Several cases are cited in support of this claim. Without considering what the law of this state is upon this subject, it is sufficient to say that the evidence given

fully meets the legal requirement contended for by the appellant. John W. Kirkpatrick was within seventy-five feet of the parties when both blows were struck. He was well acquainted with the defendant, having known him for fifteen years. This witness watched the transaction, and could see distinctly. He says that defendant, when the fatal blow was given, was standing within four or five steps of McEwen and Thomas, with his face toward them, and also toward the witness. When the first blow was given defendant moved away from McEwen a step or two. There was nothing to prevent the defendant from seeing the whole transaction. "He must have seen it unless his eyes were shut," as the witness expressed it. Roy Taylor testified substantially to the same facts. Wilbur Thomas testified that "Amasa Thomas hit Charley McEwen with a board, and Chamberlâin and Leslie Hoel were there pretty close, so they could see. They were looking at Charley McEwen. Two blows were struck. Both Hoels were there till after both blows were struck and McEwen fell to the ground." Amasa Thomas testified that defendant was there when he came up with the board. William Davey, soon after the transaction, said to the defendant: "Hoel, how come you to let Amasa hit Charley with that club? Could n't you stop that?" To which defendant replied: "Well, Bill, it was done before I had time to do anything." There is abundant testimony to sustain the finding that the defendant actually saw the blows given which took the life of McEwen.

Whether or not he distinctly remembered the transaction when his testimony was given and knowingly testified falsely is a fact which it would be impossible to establish by direct evidence, and therefore it, like other facts, may be shown by circumstances. The homicide itself would be likely to make a lasting impression upon the memory, and, although the defendant left the place after McEwen fell, he returned soon after and saw the body placed in an ambulance. He knew

enough to advise about sending word to the friends of the deceased, and to relate the transaction to William Stiff. He appeared to be in great distress and apprehension, saying: "I had better keep my mouth shut. There may be something hereafter about this." He was heard to exclaim: "Oh, my God! This is awful! I don't know what to do!" And when asked, "What is there to it, Cham, that bothers you?" he replied, "Leslie [meaning his son, who was present with him and witnessed the homicide,] never was on the stand. He won't know what to do when he goes on the stand." The next day at noon he said to Mr. Charles: "I must get Les. I want to post him up a little before the inquest. He was never on the witness-stand." In view of this testimony we are unable to say that the defendant, when testifying as a witness, had no memory upon this subject, nor can we assume that the jury erred in finding that his memory was clear at that time.

It is urged that there was no motive to induce the defendant to testify falsely, as Thomas admitted the killing, and therefore could not be benefited by the falsehood. It does not appear, however, that this admission had been made before the defendant testified at the preliminary examination or that it was known at that time that Thomas intended to confess his guilt. It does appear, however, from some of the evidence given, that the defendant was more than a mere observer of the tragedy about which he was called upon to testify. He actively encouraged and advised Thomas to do the act which took McEwen's life—was in fact *particeps criminis* therein. What effect this fact may have had upon his mind we cannot say, but the circumstances, when considered as a whole, do not seem to justify the statement that there was no motive; and whether there was or not is immaterial after the verdict. It is not essential in all cases for the state to establish a motive for the commission of the crime charged. Its presence or absence is wholly evidentiary.

The case is stronger with a motive established than without, but when the evidence satisfies the jury beyond a reasonable doubt that the defendant is guilty, without proof of a motive, such proof is unnecessary.

It has been urged in argument that the evidence given by the defendant, even if false, was immaterial, for the reasons: (1) That Thomas was convicted notwithstanding this evidence in his favor; (2) that Thomas admitted his guilt, which ended the controversy; and (3) the evidence of defendant was not relied upon by the justice of the peace at the preliminary examination. We do not understand that the question of materiality is determined by these considerations. Any evidence is material which tends to prove or disprove a material averment of the information, without regard to the subsequently ascertained weight of it in the minds of the court or jury.

We are unable to see where the rights of the defendant were in the least neglected or prejudiced. He had a fair trial, the jury convicted him, and the court approved the verdict. There is nothing for this court to do but to affirm the judgment of the district court, and it is so ordered.