THE STATE OF KANSAS, *Appellant*, v. THE GLENN LUMBER COMPANY, *Appellee*.

No. 17,085.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Appeal by the State—Order Quashing Part of an Information.* The state may appeal from an order quashing one count of an information, although another count charging a different act is held sufficient or is not attacked.

2. ——— *Appeal by the State—Order Requiring Separate Statements of Matter Pleaded in One Count.* Under the statute (Crim. Code, § 283) authorizing an appeal by the state in a criminal action "on quashing or setting aside an . . . information" an appeal may be had from an order requiring matter pleaded in one count to be separately stated in different counts.

3. ——— *Right of Appeal — Rendition of Final Judgment.* Where a motion to quash an information is sustained, and the state refuses to amend, the fact that no formal final judgment is entered discharging the defendant is not ground for dismissing the appeal.

4. INFORMATION — *Statutory Offense — Agreement to Prevent Competition.* In a prosecution under the statute (Gen. Stat.

1909, § 5185) forbidding agreements to prevent competition in the sale of articles, or to control their price, it is not necessary that the information describe the nature of the agreement complained of, further than to characterize it in the language of the statute as intended and adapted to accomplish certain results.

5. STATUTES—*Repeal by Implication—Antitrust Law.* The antitrust law of 1889 (Gen. Stat. 1909, §§ 5185-5193) is not repealed by that of 1897 (Gen. Stat. 1909, §§ 5142-5152.)

6. INFORMATION — *Duplicity.* An information is not bad for duplicity which charges in one count acts which would constitute a misdemeanor under either of the antitrust laws referred to.

Appeal from Labette district court. Opinion filed November 5, 1910. Reversed.

*Fred S. Jackson,* attorney-general, *John Marshall,* assistant attorney-general, *Charles D. Shukers,* special assistant attorney-general, and *M. E. Williams,* county attorney, for the appellant.

*Thurmond & Farrar,* and *Glasse & Burton,* for the appellee.

The opinion of the court was delivered by

MASON, J.: An information was filed against the Glenn Lumber Company, a corporation, charging it in ten separate counts with violating the antitrust laws. The defendant filed a motion to quash the first eight, and to require the state to set out in separate counts the different offenses charged in each of the remaining two. The court sustained both motions and made an order giving the plaintiff thirty days to amend the information, if so desired, and the defendant twenty days in which to plead to such amended information. The state declined to amend, and appeals from the rulings upon the motions.

The defendant challenges the right of the plaintiff to be heard, upon the grounds that the state can not appeal from an order quashing a part of the counts of an

The State v. Lumber Co.

information or from the sustaining of a motion for the separate statement of several offenses, and that if such an appeal lies at all it can be brought only after a final judgment for the defendant, which was not formally rendered in this case.

It has been held in other jurisdictions that so long as any count of an information is held good the state can not appeal from an order quashing the others. (*The State v. Stegman,* 90 Mo. 486; *The State v. Thompson,* 41 Tex. 523.) But under the practice in this state the prosecution of several distinct offenses at the same time by means of an information containing several counts is a mere matter of convenience. For many purposes the proceeding under each count may be regarded as in effect a separate action. A defendant may procure a reversal as to a part of the counts on which he has been convicted, although the judgment is affirmed as to the rest. (*The State v. Guettler,* 34 Kan. 582.) We see no reason why, where one count of an information has been quashed, a review of that ruling may not be had, even although the case proceeds to trial upon other counts charging other violations of the law. Where several counts are employed merely as different methods of describing the same illegal act the rule may be different.

The statute does not in terms authorize an appeal from an order requiring the state to amend an information by making two or more counts out of matter contained in one. But such an order, when the state refuses compliance, necessarily ends the prosecution and in effect sets aside the information. It is therefore appealable under the statute authorizing an appeal "on quashing or setting aside an . . . information." (Crim. Code, § 283.)

The full language of the statute is that "appeals to the supreme court may be taken by the state in the following cases: . . . upon a judgment for the de-

fendant on quashing or setting aside an indictment or information." (Crim. Code, § 283.) Under a somewhat similar statute, containing, however, other provisions possibly affecting the matter, the supreme court of Missouri held that an order quashing an indictment could not be reviewed on appeal until a final judgment for the defendant had been formally entered. (*State v. Fraker,* 141 Mo. 638.) We do not regard the omission to make a complete record, showing a technical final disposition of the case, as fatal to the right of review. The order sustaining the motion to quash by its own operation set aside the counts of the information so assailed, and left nothing pending in that respect against the defendant. True, the district court would for some purposes be regarded as retaining jurisdiction so long as an amendment might be contemplated, but when the state declined to amend it elected to treat the proceeding as at an end, and the practical effect was a discharge of the defendant as to the counts involved. The state's refusal to comply with the order requiring two of the counts to be recast created substantially the same situation with respect to them.

Upon the merits, the principal contention of the defendant is that the allegations of each of the first eight counts are too indefinite to advise it of the nature of the accusation against it. The statute under which they are drawn reads:

"All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view or which tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state, or in the product, manufacture or sale of articles of domestic growth or product of domestic raw material, or for the loan or use of money, or to fix attorneys' or doctors' fees, and all arrangements, contracts, agreements, trusts or combinations between persons or corporations, designed or which tend to advance, reduce or control the price or the cost to the producer or to the consumer of any such products or articles, or to control the cost or rate of in-

surance, or which tend to advance or control the rate of interest for the loan or use of money to the borrower, or any other services, are hereby declared to be against public policy, unlawful and void." (Laws 1889, ch. 257, § 1, Gen. Stat. 1909, § 5185.)

"All persons entering into any such arrangement, contract, agreement, trust or combination, or who shall after the passage of this act attempt to carry out or act under such arrangement, contract, agreement, trust or combination . . . shall be guilty of a misdemeanor." (Laws 1889, ch. 257, § 3, Gen. Stat. 1909, § 5187.)

The first count, which, so far as concerns this question, is like the next seven, charges:

"That on the first day of July, 1909, at the county of Labette, in the state of Kansas, the said defendant, the Glenn Lumber Company, a corporation organized and existing under and by virtue of the laws of the state of Kansas, did then and there wrongfully and unlawfully make and enter into an arrangement, contract, agreement and combination with the Monarch Portland Cement Company, a corporation organized and existing under and by virtue of the laws of the state of Kansas, and others, whose names are to your informant now unknown, a more particular description of which arrangement, contract, agreement and combination your informant is now unable to give, which arrangement, contract, agreement and combination was made with a view to prevent and which tends to and does prevent full and free competition in the importation, transportation and sale of cement, an article imported into and produced and manufactured and sold in the state of Kansas, and which arrangement, contract, agreement and combination was designed to and tends to and does advance and control the price and cost of cement to the consumer of such cement."

The state relies upon the familiar rule that in charging a purely statutory offense it is sufficient to employ the language of the statute. Of course, where a term is used which designates a common-law offense the pleader must allege the acts constituting it, but that is

not the case here.    Another exception, the benefit of which the defendant invokes, has been thus stated:

"If the statute does not sufficiently set out the facts which constitute the offense so that the defendant may have notice of that with which he is charged, then a more particular statement of the facts than is contained in the statute becomes necessary."    (10 Encyc. Pl. & Pr. 487.)

(See, also, 22 Cyc. 339 *et seq.;* 27 Cyc. 909.)

A good illustration of a statute of the general character of that now under consideration to which this exception would obviously apply is that involved in *People v. Sheldon et al.,* 139 N. Y. 251, which made it a misdemeanor to conspire "to commit any act injurious . . . to trade or commerce." (p. 261.)    In a prosecution under such a statute it would plainly be insufficient merely to allege that the defendant conspired "to commit an act injurious to commerce."    The federal act of 1890 denouncing monopolies and contracts in restraint of interstate commerce (26 U. S. Stat. at L. p. 209, ch. 647) has been held to belong to the class to which the exception applies.    (*In re Greene,* 52 Fed. 104; *United States v. Nelson,* 52 Fed. 646; *United States v. Patterson,* 55 Fed. 605.)    The language of that act, however, is extremely general—much more so than that of the Kansas statute.    Under statutory provisions quite similar to those here involved the general rule that the information need only charge an offense in the very words of the statute was applied in *Commonwealth of Ky. v. Grinstead & Tinsley,* 108 Ky. 59, but denied in *State v. Witherspoon,* 115 Tenn. 138.

The real inquiry in each case must be whether the information sufficiently advises the defendant of the nature of the charge against him, so that he can properly prepare his defense and so that he is not placed at a disadvantage in the conduct of the trial on his part. If it accomplishes this the spirit of the law is complied with.    In the present instance the pleading goes

somewhat beyond the bare letter of the statute. The information states the name of one of the other parties to the unlawful agreement, and mentions the specific commodity the cost of which is designed to be affected. What it lacks to make it sufficiently specific, if anything, is a statement of the character of the agreement to which the defendant is alleged to have been a party, or, what is perhaps the same thing, the means by which the control of the price of cement was sought to be accomplished. The omission of such a statement was one of the grounds upon which the Tennessee court held the indictment bad in the case cited. We can not agree, however, that it is necessary for the state to specify the precise nature of the agreement, or do more than to characterize it as one intended and adapted to accomplish the results described in the statute. Such a requirement would go far to render the law ineffective, since it would often be difficult or impossible for the prosecutor to ascertain with certainty the details of the combination complained of. On the other hand, a case could hardly arise under this statute in which an accused person could be seriously hampered in his defense by the omission of an information to describe with exactness the nature of the agreement forming the basis of the charge.

The eighth and ninth counts each contained allegations similar to those already quoted, coupled with further averments evidently framed under the antitrust law of 1897 (Laws 1897, ch. 265, Gen. Stat. 1909, §§ 5142-5152), charging the defendant, among other things, with having entered into an agreement the parties to which bound themselves not to sell cement below a common standard figure. This was the basis of the motion to require a separate statement. The charges evidently referred to the same act, and were therefore properly united in one count, the prosecution being for a misdemeanor. (*The State v. Schweiter*, 27 Kan. 499; 10 Encyc. Pl. & Pr. 532-534; 22 Cyc. 380.)

A final contention of the defendant is that the act of 1889, under which the first eight counts are drawn, is repealed by implication by the act of 1897 just referred to, on the theory that the later enactment is intended to cover the entire subject matter of the earlier one. A law forbidding combinations to prevent competition in buying and selling live stock, passed in 1891 (Laws 1891, ch. 158, Gen. Stat. 1901, §§ 2439-2441), has been held to have been so superseded, but for the reason that it treated but a single phase of a matter that was covered in every aspect by the law of 1897. (*The State v. Wilson*, 73 Kan. 343.) The two statutes involved in this proceeding have much in common, but inasmuch as several subjects mentioned in the first are omitted from the second the legislature must be deemed to have intended them to stand together. A number of actions have been maintained since 1897 upon the statute of 1889. (*The State v. Harvester Co.*, 79 Kan. 371; *The State v. Harvester Co.*, 81 Kan. 610.)

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.