No. 27,702.

THE STATE OF KANSAS, *Appellant*, v. LUTHER V. CRAIG, *Appellee*.

(259 Pac. 802.)

SYLLABUS BY THE COURT.

ARSON — *Ownership of Property — Condonation.* Where defendant willfully burned a barn on a farm held by him as tenant under a lease from his mother, she being the owner of an undivided one-half interest in the farm and defendant's brother and sister and himself each owning an undivided one-sixth interest therein, it was no defense to a prosecution of the defendant for arson that long after the criminal prosecution was begun his mother testified she had not sanctioned defendant's act before the event but that then and there on the witness stand eighteen months after the burning of the barn she ratified it; nor was it a defense that defendant himself owned an undivided fractional interest in the farm to which the barn pertained; nor did defendant's possession and occupancy of the farm and barn as tenant lessen his responsibility for the crime of arson committed by him.

Appeal from Sedgwick district court, division No. 4; ISAAC N. WILLIAMS, judge. Opinion filed October 8, 1927. Reversed.

*William A. Smith*, attorney-general, *Roland Boynton*, assistant attorney-general, *William J. Wertz*, county attorney, *George L. Adams, Wilmer R. Harms* and *P. K. Smith*, deputy county attorneys, for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant was prosecuted on a charge of arson for the burning of a barn on a farm which he held as tenant, the title to the farm being one-half in his mother and one-sixth each in defendant's brother, sister, and himself.

The barn was burned in August, 1925, and defendant was arrested therefor some time later. His first trial was without result. At the second trial, defendant's mother, Blanche Craig, called as a witness for the state, testified that she and her mother and the defendant lived on the farm, a short distance northeast of Wichita; that defendant leased the farm from her and paid her one-third of the grain grown thereon as rent; that defendant had possession of the farm, including the barn; that her husband had died seized of the farm five years previously, and in consequence an undivided one-half of the farm had devolved on her and a one-sixth interest

Arson, 5 C. J. pp. 552 n. 98, 553 n. 12; L. R. A. 1918E, 484; 17 A. L. R. 1171; 2 R. C. L. 502. Criminal Law, 16 C. J. pp. 92 n. 84, 85, 93 n. 88.

on each of her three children, one of whom was the defendant. She further testified that at no time prior to the burning of the barn, which was on August 20, 1925, did she authorize the defendant to burn it. On cross-examination and over the state's objection, she testified that she "now [March 2, 1927] ratified the burning of the barn by the defendant." Thereupon a motion to discharge the defendant was sustained; and the state reserved an exception to that ruling and the case is here for review.

The section of the crimes act under which the defendant was prosecuted, in part, reads:

"Every person who shall willfully set fire to or burn in the nighttime, any . . . barn, . . . of another, . . . not the subject of arson in the first or second degree, shall on conviction be adjudged guilty of arson in the third degree." (R. S. 21-507.)

The state discusses three propositions suggested by this statute and the facts testified to or stipulated by the litigants—(a) the fact that defendant owned a one-sixth interest in the property did not exempt him from the condemnation of the statute; (b) the mother's belated ratification of the defendant's incendiary act did not relieve him of its penal consequences; and (c) the fact that defendant was lessee of the farm and in possession of the barn was immaterial so far as concerned his criminal responsibility.

We have not been favored with a brief by defendant's counsel, which in a case of this sort is hardly fair to the courts—particularly to the trial court which they induced to make such a questionable ruling.

It will be noted that the statute quoted above declares it to be arson in the third degree to burn the barn of another person in the nighttime. This barn was partly the property of other persons, defendant's mother, sister and brother. The fact that defendant himself also had an undivided fractional interest in the barn was of no consequence in considering the question of his guilt. In this state a husband has a certain statutory interest in the real property of his wife, but nevertheless he may be guilty of arson if he sets fire to her house. (*State v. Shaw,* 79 Kan. 396, 100 Pac. 78.) One of the purposes of the statute is the protection of property; it is a paragraph of article 5 of the crimes act which deals altogether with offenses against property; and it must be held that defendant's ownership of an undivided, fractional interest in the farm did not relieve him from liability.

Nor can it be held that the mother's ratification or condonation of the burning of the barn purged defendant's act of its criminal attributes. So far as shown by the record, when the defendant burned the barn his conduct and intent were criminal; the status of his act was then fixed; and it was beyond the power of his mother to purge that act of its criminal character by her maternal leniency, subsequent ratification or condonation. (16 C. J. 92.) Indeed the doctrine that offenses may be purged of their criminal character by subsequent ratification of the injured party is one of decidedly narrow scope in this jurisdiction; all our crimes are statutory and are considered as offenses against the state itself rather than against some private party who may incidentally have been injured in person or property by the criminal act or omission of the wrongdoer. In *Matter of Galbreath*, 24 N. D. 582, 585, it was said:

"We must remember that a criminal offense is an offense against the sovereign state, and not against an individual; and that no individual, not even the complaining witness, has the power or authority to control the action of his sovereign, whose dignity alone is sought to be vindicated."

Where the offense has been willfully committed, it is difficult to see how subsequent ratification could have any effect upon its reprehensibility. An act which is *prima facie* criminal may indeed be shown to be otherwise if the *intent* to commit the wrong was wanting. In *Holsey v. State*, 4 Ga. App. 453, the defendant drove his employer's horse without first having obtained the latter's consent. When the owner found it out, he constrained the defendant to buy the horse at a full price. Afterwards the defendant was prosecuted and convicted under a statute which declared that "if any person shall willfully ride or drive the horse of another without his consent, he shall be guilty of a misdemeanor." The judgment was reversed. The court said:

"Indeed, we think it may be said, as a general rule, that in no event will a prosecution under section 225 of the penal code lie, where, before the institution of the prosecution, the owner of the animal, either for or without a consideration, has given acquiescence, or, so to speak, *ex post facto* consent to the previously unauthorized use of his property. This ruling is to be taken, however, with the understanding that the principle is applicable only in that class of cases where the offense involves no crime against society or good morals, but relates solely to the redressing of private property wrongs. Of course the *ex post facto* consent of the owner could not render a larceny, with all its elements complete, any the less a crime; but as to the offenses of the nature in-

volved in section 225 of the penal code there is a different principle." (p. 454. See, also, *State of Iowa v. Engle,* 111 Iowa 246.)

In *May v. The State,* 115 Ala. 14, it was held that where a person removed or sold personal property for the purpose of hindering delaying or defrauding any person who had a claim or lien thereon, with a knowledge of the existence of such claim or lien, as prohibited and made criminal by the Alabama criminal code, the mere fact that the person having the claim or lien on the property removed or sold ratified the act of selling or removing, did not purge the act of criminality, and constituted no defense.

In *Fleener v. State,* 58 Ark. 98, the defendant was convicted of embezzling funds of his employer, an express company. The guarantee company which served as his bondsman made good his defalcation, and he contended ineffectually that neither the express company nor the state has any interest in the matter. The court said:

"In this the defendant is mistaken. This is no longer a controversy between himself and the two companies, or either of them, and has not been since he fraudulently appropriated the money of the express company, if indeed he did so appropriate it. It is now a controversy between the state of Arkansas and himself, which the state will not permit either one of the said companies to determine at present or in the future, nor will the state acknowledge the validity of any settlement of it, by anything they both, or either of them, have done in the past." (p. 105.)

Where a wrongdoer has made reparation or restitution to the person sustaining private damages by his wrongful act or omission, a situation may sometimes arise where the question of *commencing* or *discontinuing* a criminal prosecution may address itself forcibly to the county attorney's discretion, or *after conviction* will similarly invoke the trial court's discretion in fixing the punishment so far as the flexibility of penalties is permitted by our crimes act; and such a situation may present a strong appeal to the pardoning power of the governor (*State v. Newcomer,* 59 Kan. 668, 670, 54 Pac. 685), but once the machinery of the criminal law is set in motion against an offender, neither its principles nor processes can be judicially swayed or stayed because the compassion of the prosecuting witness is then moved in behalf of the wrongdoer. In this case, the fact that the mother of defendant, while testifying on cross-examination at a second trial of defendant held eighteen months after the crime had been committed, avowed that she then condoned and

ratified it had no legal effect upon the character or gravity of defendant's criminal delinquency. (1 Bishop on Criminal Law, 9th ed., 672; I Wharton Criminal Law, 11th ed., 572; 16 C. J. 92.)

In this case, also, it must be noted that property rights in this barn of two other persons, defendant's brother and sister, were feloniously violated by defendant. Certainly the mother's ratification of the burning of the barn could not be held to affect in the slightest degree the criminal character of defendant's act so far as concerned the property rights of his brother and sister.

Touching the point that defendant was in possession of the barn as lessee of the farm at the time of the burning, we do not see what that fact had to do with its criminal character. Arson in the third degree is a statutory offense; defendant's act was an offense against property, not mainly or particularly one against another's possession or occupancy of the property; and his criminal responsibility for his act was not diminished by any rights attaching to his leasehold.

The state's appeal is sustained and the judgment of the district court is reversed.