No. 39,067 and No. 39,112

MID-CONTINENT SUPPLY COMPANY, a Corporation, and H. O. LYNCH, Receiver, *Appellees*, v. FRED M. HAUSER, LLOYD HAUSER, and NOLAN HAUSER, *Appellants*.

(269 P. 2d 453)

Opinion filed April 10, 1954.

*Fred L. Conner,* of Great Bend, argued the cause, and *T. B. Kelley,* of Great Bend, and *Samuel Mezansky,* of New York City, N. Y., were with him on the briefs for the appellants.

*Richard Jones,* of Wichita, argued the cause, and *R. C. Russell, Isabel Obee, Don C. Foss,* all of Great Bend, and *A. W. Hershberger, J. B. Patterson, Wm. P. Thompson, H. E. Jones,* and *Jerome E. Jones,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action to foreclose a mortgage covering two oil and gas leaseholds. The question in controversy is whether the funds from oil production from said leaseholds in the hands of the operating receiver should be applied to the unsatisfied part of the first or second mortgagee's judgments. The appellee Mid-Continent Supply Company, a corporation, will be hereinafter referred to as plaintiff or first mortgagee, and the appellants Fred M. Hauser, Lloyd Hauser and Nolan Hauser, as second mortgagees or defendants Hauser. The pertinent facts are:

On November 21, 1950, for the purpose of securing a series of notes given for the purchase price of two oil and gas leaseholds, Rean Oil Company, Inc. gave a mortgage covering these leaseholds to Anschutz Production Company, Inc. By the terms of this mortgage, the mortgagor for sufficient consideration,

". . . does sell, assign, transfer and set over unto the said party of the second part, his heirs and assigns, forever, the following oil and gas leases, to-wit: (legal description of the two leases) *together with the rights incident thereto and the personal property thereon, appurtenant thereto, or used or obtained in connection therewith, and all the estate, title and interest in the said party of the first part therein.* . . . said party of the first part does hereby covenant and agree that at the delivery hereof it is the lawful owner . . . *free and clear of all encumbrances.* . . ." (Italics supplied.)

This is followed by terms for the payment of the notes secured by the mortgage and provides that in case of default in payment, the mortgage is subject to foreclosure. This mortgage was duly recorded on January 16, 1951. Thereafter on November 19, 1951, Anschutz Production Company, Inc., duly assigned the mentioned mortgage to the plaintiff Mid-Continent Supply Company.

On July 9, 1951, more than seven months after the execution of the first mortgage, the mortgagor, Rean Oil Company, Inc., gave a second mortgage to the defendants Hauser. The terms of this mortgage after setting up a schedule of payments on the notes which it secured, provided that "the mortgagor mortgages and warrants to the mortgagees . . . the following described lease and the leasehold estate or estates thereby created for oil and gas mining purposes, including all personal property situated thereon *belonging to the mortgagor,* including the equipment of wells . . . :" (Italics supplied.) (Then follows the legal description of one of the two leases described in the first mortgage.)

On September 21, 1951, the mortgagor, Rean Oil Company, Inc., caused a transfer order to be executed and delivered, assigning the proceeds from the oil runs on the lease described in the second mortgage, to the defendants Hauser. The mortgagor defaulted in its payment due the plaintiff on November 21, 1951. Plaintiff notified the mortgagor of its intention to foreclose the mortgage if the default continued. The mortgagor failed to make good its default, and plaintiff commenced an action to foreclose its mortgage on December 14, 1951. Plaintiff made, along with others, the mortgagor and each of the Hausers parties defendant in the action. At the same time, plaintiff filed its verified application for appointment of a receiver, requesting the court to appoint a receiver to take possession and charge of the property, and to use power and authority to continue to operate and to produce oil from the properties described in the mortgage, alleging that the mortgagor had permitted various liens to attach to the mortgaged property,

and that substantial harm was being done to the property by over-producing the same; that the mortgaged property described in the petition was insufficient to discharge the mortgage debt. The court after hearing plaintiff's application and statements of counsel, after examining the files and being fully advised in the premises, found that plaintiff's motion was well taken and that a receiver should be appointed. The court appointed a receiver and directed him to take possession and charge of the oil and gas leases; to continue to operate and produce the oil and gas from the properties of the defendant mortgagor, Rean Oil Company, Inc., involved in the action; to collect from the oil purchaser the proceeds of the oil runs, and to conserve and protect the property of the defendant.

On March 3, 1952, the defendants Hauser entered their appearance and filed their answer and cross petition seeking foreclosure of their second mortgage, setting forth the fact that the plaintiff's mortgage covered additional property other than the property mortgaged to the defendants Hauser, and in the event plaintiff procured a judgment decreeing its mortgage to be a just lien on the property described in plaintiff's petition, defendants were entitled to have the property mortgaged by Rean Oil Company, Inc., to the plaintiffs, and not included in the mortgage from mortgagor to these defendants, to be first sold and the proceeds therefrom applied to the judgment of the plaintiff, and that plaintiff should be required to marshal assets and collect its debt out of that property to which the Hausers could not resort; that the property be sold and the proceeds of the sale be applied to the costs of the action, taxes, and then to the satisfaction of the judgment of these defendants, and the balance *retained by the court to await the further order of the court.*

The cause came to trial and on April 4, 1952, the trial court entered judgment in favor of the plaintiff, which judgment was declared to be a first lien upon the two leaseholds in question, and entered judgment in favor of the defendants Hauser, and declared their judgment to be a second lien on the lease described in their mortgage, and issued an order of sale of the leaseholds. At the same time, the court withheld until a further date its decision with reference to the application of the funds in the hands of the receiver.

The mortgaged premises were sold at sheriff's sale. The sale was confirmed and the entire proceeds of the sale were assigned to the payment of costs, taxes, and the balance applied on plaintiff's judg-

ment, which balance was insufficient to satisfy that judgment. Subsequently the trial court entered judgment in favor of the plaintiff, directing that the funds in the hands of the receiver be applied to the costs of the receivership, and the balance be applied to the unsatisfied portion of plaintiff's judgment. Defendants filed a motion for new trial which was overruled, hence this appeal.

Defendants first contend that the order appointing the receiver was invalid for the reason that the application for such appointment was verified by one of the plaintiff's attorneys on information and belief. The verification is not set forth in the abstract. The plaintiff being a corporation, the verification made by its attorney was in accordance with G. S. 1949, 60-731. In *Hornick v. U. P. Railroad Co.*, 85 Kan. 568, 118 Pac. 60, we held that a verification of a pleading may be made by an officer, agent or attorney of a corporation without setting forth why it was not made by the corporation itself, or otherwise complying with the requirements of G. S. 1949, 60-735. Moreover, a party who challenges the form or sufficiency of a verification of a pleading should attack it by motion before the issues are joined, and evidence introduced on the trial of the action on its merits, as an objection made after such time is ordinarily too late to be available.

In the instant case, there is no showing that the application for appointment of receiver was not properly verified, in any event, the objection came too late.

Defendants contend that the court was without authority to appoint the receiver for the reason that no notice was given to the defendants of such application. G. S. 1949, 60-1201, provides:

"A receiver may be appointed by  .  .  .  the district court,  .  .  .

"*Second.* In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt."

Plaintiff's verified application alleged that the mortgaged property was insufficient to discharge the mortgage debt, and that defendants had permitted various liens to attach to the mortgaged property, and were doing substantial harm to the property. Under the mentioned statute, a receiver may be appointed in an action to foreclose a mortgage where it appears that the mortgaged property is insufficient to discharge the mortgage debt. (*Bank v. Dikeman,*

98 Kan. 222, 157 Pac. 1177; *Schultz v. Stiner,* 97 Kan. 555, 155 Pac. 1073.) There is nothing in the record to indicate that the court did not hear evidence prior to the appointment of the receiver. The record is to the contrary. The court's order appointing a receiver discloses that the matter was presented to the court. The court having heard the statements of counsel, having examined the files and being fully advised in the premises, found plaintiff's application was well taken and a receiver should be appointed. Where the record fails to show what action was taken with reference to some particular matter in a proceeding, it will be presumed in the absence of an affirmative showing to the contrary that the action of the court was regular and in accordance with the law. (*Rothman v. Globe Construction Co.,* 171 Kan. 572, 235 P. 2d 981; *Babb v. City of Wichita,* 172 Kan. 416, 423, 241 P. 2d 755.) Furthermore, it appears from the record that the defendants Hauser answered and made no objection to the appointment of a receiver and in fact asked that the property be sold, the proceeds applied to the costs, and to the satisfaction of defendants' judgments, and the balance to be retained by the court to await the further order of the court; that when the cause came on for trial on April 4, 1952, approximately four months after the receiver was appointed, the defendants advised the court for the first time that they had an assignment of the oil runs, and that they claimed the runs as if no receiver had been appointed. No objection was made as to the appointment of the receiver until the filing of their motion on October 21, 1952, to have the funds in the hands of the receiver paid to the defendant. It is apparent that the defendants acquiesced in the appointment and action of the receiver. The long acquiescence of the defendants in the appointment of the receiver is tantamount to consent and they cannot now question the legality of that appointment. (*Reneau v. Lawless,* 79 Kan. 553, 100 Pac. 479.)

The principal question for our determination is whether the second mortgagee, to whom all credits for oil receipts from the leasehold were validly assigned before default in payment on the senior mortgage, has a prior right to such receipts paid to the receiver from and after the date of his appointment until the mortgagor was divested of title by foreclosure sale. It is conceded that plaintiff had a first mortgage, and defendants Hauser a second mortgage upon the leasehold estate, and that the sale price of the leases was insufficient to satisfy the first mortgage and, of course,

nothing was paid on the second. Pending foreclosure and sale, the receiver collected a large sum of money by way of oil runs. This sum was less than the amount still owing on the first mortgage. It is also conceded that the transfer order issued by the mortgagor to the second mortgagee was in the conventional form of common usage in the crude oil production industry, and that the defendant, Phillips Petroleum Company, had been making payments for oil purchased from the leasehold to the defendants Hauser, as provided in the transfer order to the time of the appointment of a receiver and that the payments were applied to the Hauser mortgage. The transfer order executed to the second mortgagee was subsequent to the mortgage and was not filed of record.

Both mortgages were, in terms, plain mortgages of the premises in question, and neither contained an assignment of the rents and profits. It is now claimed by the second mortgagee that by reason of the transfer order he is entitled to a specific lien upon the funds in the hands of the receiver arising from the mortgaged property, and that by virtue thereof he is entitled to the same as against the first mortgagee. It is recognized in this state that a mortgage is a mere security in the hands of the mortgagee, and does not convey any interest in the land itself. (*Penn Mutual Life Ins. Co. v. Tittel,* 153 Kan. 530, 111 P. 2d 1116; 4 Hatcher's Kansas Digest [Rev. Ed.], Mortgages, § 2; West's Kansas Digest, Mortgages, § 1.) After the mortgage conditions have been broken, the mortgagee may bring an action for possession or he may bring an action in foreclosure, which results in a judicial sale. Even after a condition is broken, the mortgagor is entitled to the rents and profits so long as he retains possession. (*Hall v. Goldsworthy,* 136 Kan. 247, 14 P. 2d 659.) A mortgagee, however, after bringing an action in foreclosure and making to the court such showing as is required by G. S. 1949, 60-1201, *Second,* has a right to have a receiver appointed for the property, and this receiver by virtue of his possession is entitled to the rents and profits that may issue from such possession to be received and held by him for the benefit of the parties in interest. If the property is insufficient to discharge the debt, the mortgagee has a right to look to the income of the property prior to its sale. (*Schultz v. Stiner,* 97 Kan. 555, 155 Pac. 1073.) In *Bank v. Dikeman,* 98 Kan. 222, 157 Pac. 1177, we held that where a receiver has been appointed in an action to foreclose a mortgage on real property, and the property fails to sell for

enough to satisfy the mortgage debt, the mortgagee is entitled to the income from the property from the time of the appointment of a receiver until the sale of the property.

It is clear that the mortgagor by his first mortgage did sell and assign to the plaintiff all the rights in the oil and gas leases and the personal property thereon, appurtenant thereto, or used or obtained in connection therewith, and all of his estate, title and interest in said property. If there had been no second mortgage upon this property, it is obvious that the plaintiff could have had the receiver appointed in this case, and would by virtue of that receivership have realized all the income from the oil runs collected by the receiver, notwithstanding its mortgage did not contain a specific pledge for the oil runs, for those runs were as much pledged as the corpus itself. Since the plaintiff would have been entitled under the existing circumstances to the oil runs in the absence of a second mortgage, it is obvious that the execution of the second mortgage to defendants Hauser did not affect those rights at all, as the second mortgage cannot impair the rights already granted to the holder of the first mortgage.

The plaintiff, in the enforcement of its right conferred by statute, secured the appointment of a receiver who took possession and control of the mortgaged property, produced the oil therefrom and sold that oil. The receiver was a creature of the court and not of the mortgagor. If he had been the agent of the mortgagor, it might be that the transfer order given by the mortgagor would be binding upon its agent, but the receiver held possession and produced and sold the oil for and under the direction of the court. Plaintiff's mortgage was on file, and any assignment of the oil runs taken by defendants must have been taken with full knowledge of the result which has in fact occurred. Their assignment being from the mortgagor, they cannot be entitled to any proceeds from the oil runs to which the mortgagor itself would not be entitled, had no assignment been executed. The defendants can acquire from the mortgagor no greater right to the proceeds from oil runs than the mortgagor itself had. It is a general rule that where a receiver is appointed, generally, and not for the benefit of any particular mortgagee, the funds collected by him are applicable to the liens on the property in the order of their priority. (37 Am. Jur. 312, § 976.) A junior mortgagee is entitled to share in rents and profits collected by a receiver for the benefit of a senior mort-

gagee, only to the extent of the surplus remaining after the satisfaction of the senior mortgage. (37 Am. Jur. 307, § 968.)

In view of what has been said, we conclude that the trial court did not err in applying the proceeds from the oil runs in the hands of the receiver to the unpaid portion of plaintiff's judgment. Therefore, it is unnecessary to discuss other questions presented on this appeal. The judgment of the trial court is affirmed.

It is so ordered.