No. 40,844

STATE OF KANSAS, *Appellee,* v. LESTER L. CROSBY, *Appellant.*

(324 P. 2d 197)

Opinion filed
April 12, 1958.

*Don W. Noah,* of Beloit, argued the cause, and *Eugene P. Zuspann,* of Goodland, and *Ralph H. Noah,* of Beloit, were with him on the briefs for the appellant.

*Robert J. Roth,* Assistant Attorney General, argued the cause, and *John Anderson, Jr.,* Attorney General, and *Thomas H. Taggart,* County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: Defendant was charged with and convicted on two counts of arson, and has appealed.

The first count charged him with burning the property of another. The second count charged him with burning the property with intent to defraud the insurers.

All statutory references, unless otherwise indicated, are to G. S. 1949.

21-581 provides:

"That any person who willfully sets fire to or burns . . . any dwelling house, . . . such property being the property of another person, shall be guilty of arson in the first degree. . . ."

Count one reads:

"That on or about the 13th day of February, 1956, in the County of Sherman and State of Kansas, Lester L. Crosby did then and there unlawfully, wilfully and feloniously set fire to and burn a certain dwelling house located at 402 East 12th Street in the City of Goodland, in said county and state, said dwelling house being the property of the Goodland Savings and Loan Association of Goodland, Kansas, by virtue of certain real estate mortgage dated December 1, 1953, and recorded at page 162 Mortgage Record 41, in the office of the Register of Deeds of Sherman County, Kansas, whereby said Lester L. Crosby did mortgage and convey the aforesaid dwelling house to said Goodland Savings and Loan Association, in violation of Section 21-581 of the 1949 General Statutes of Kansas."

21-584 provides:

"That any person who willfully and with intent to injure or defraud the insurer sets fire to or burns . . . any building, structure or personal property, of whatsoever class or character, whether the property of himself or of another, which shall at the time be insured by any person, company or corporation against loss or damage by fire, shall be guilty of a felony . . ."

Count two reads:

"That on or about the 13th day of February, 1956, in the County of Sherman and State of Kansas, Lester L. Crosby did then and there unlawfully, wilfully and feloniously, with the intent to injure or defraud the insurers, set fire to and burn a dwelling house and personal property therein, located at 402 East 12th Street, in the City of Goodland, in said county and state, which said property was at the time insured against loss or damage by fire by the

Phoenix Insurance Company of Hartford, Connecticut; The Midland Mutual Fire Insurance Company of Newton, Kansas; and The State Farm Fire and Casualty Company of Bloomington, Illinois, in violation of Section 21-584 of the 1949 General Statutes of Kansas."

With respect to count one, it is not disputed that the dwelling house in question was owned by and was in the possession of defendant. On December 1, 1953, he and his wife executed a note in the amount of $10,000 to the Goodland Savings and Loan Association, due in five years, with annual principal payments of $750, and gave as security therefore a first mortgage on the house. As of the date of the fire no part of the principal amount of the note had been paid and the mortgage was in full force and effect.

With respect to matters contained in count two, it is not disputed that as of the date of the fire, February 13, 1956, the following insurance policies, which covered loss by fire, were in effect:

A $2,000 policy with Phoenix, dated May 7, 1955, for a term of one year, on the contents of the house.

A $12,000 policy with Midland Mutual, dated May 4, 1955, for a term of one year, on the house.

A $12,000 policy with State Farm, dated March 7, 1955, for a term of one year, on the house.

In addition to the foregoing, the evidence, highly summarized, established substantially the following facts:

Defendant and his wife had been married for twenty-six years and for some time had operated a business in Goodland known as "Crosby's Corner" which consisted of a soda fountain, lunch counter, cosmetics and so forth. They and their 14-year-old daughter resided in the house in question which had been built in 1951 at a cost of almost $27,000. It was four blocks from their place of business. For about three years it had been listed for sale with a $35,000 price tag. An offer of $30,000 had been received but had not been accepted. Shortly before the fire the mortgagee mentioned in count one had notified defendant that it was expecting him to make payment of the $750 annual principal payments on the note then delinquent, and that if such was not done in the immediate future foreclosure of the mortgage was threatened. Payments of interest on the note were not delinquent. Defendant and his wife were not involved in marital difficulties. Their business was not particularly prosperous, but, other than the fact concerning the note and mortgage on the house, defendant was in no acute

financial difficulty. The house and its contents were not overinsured.

About four o'clock in the morning of February 13, 1956, neighbors smelled smoke and discovered the fire in the house. The fire department responded immediately. All doors and windows were found to be locked. After gaining entrance the firemen discovered an intense fire in the attic and the entire room was a solid blaze. Almost simultaneously two fires were discovered in the basement, one in the ceiling and one in a small closet under the stairway. These fires were separate and distinct. Also, there was no connection between them and the one in the attic. Gasoline odors were detected in the basement and while attempting to extinguish the basement fires the firemen got "flares" or "flash-backs," which are peculiar to gasoline fires.

The fires were extinguished within an hour. The house was securely locked and police were called to stand guard. The next day a deputy state fire marshal and the fire chief commenced an investigation. No defects were found in the electric wiring or in the gas furnace connections. Samples of wood were taken from places close to where the blazes had been and were found by experts in the field to contain gasoline. The same was true of bedding and other cloth materials removed from a trunk in the basement. A gasoline-powered lawn mower was in the basement. The cap on its gasoline tank had not been removed. Considerable water had poured into the basement in extinguishing the fires. No portion of the attic floor was burned through and there was no fire whatever on the first floor of the house. Prior to the fire no clothing, keepsakes or other valuables had been removed from the house.

Two days after the fire defendant was questioned by the county attorney in the presence of the sheriff and the deputy state fire marshal. The gist of his statement to the officers was as follows:

On the day and evening before the fire he had been working at his store and that night intended to go to Hays, where his wife and daughter were visiting. The evening was chilly, and noticing that he had forgotten his topcoat, he walked from his store to his house to get it about 9:40 P. M. Upon opening the rear door he smelled smoke. He turned on the lights and saw smoke. He got his coat, turned off the lights, and did not use the telephone which was a few feet away. He locked the rear door and started for his

store with the intention of calling police to investigate and see what was causing the smoke. On the way to his store he felt weak and slowed down. He had difficulty in opening the door of the store and when he got inside he sat down on a "coke" case, intending to sit there and rest for a short time. The next thing he knew it was six o'clock in the morning and he found himself lying on the floor. He immediately went to his mother-in-law's house, a short distance away, at which place his brother-in-law asked him where he had been and told him that they had been looking for him all over town. Defendant then asked what had happened to the house, and upon being told that it had burned, replied, "For heaven sakes, I wonder what happened?" Shortly thereafter, at the suggestion of the brother-in-law, a doctor was called and defendant was taken to the local hospital.

The defendant did not testify in his own behalf.

The trial consumed several days. The verdict of guilty on both counts was approved by the trial court. Defendant's motion for a new trial was overruled, and he was sentenced in conformity with the two statutes involved, the sentences to run concurrently.

In seeking a reversal of the judgment, defendant specifies eleven grounds of alleged error. Several of these have to do with count one, and our decision as to the conviction on that count answers the contentions made with respect thereto.

Count one is based on 21-581, which makes it a felony to willfully set fire to or burn the property of another person, and defendant contends that the "interest," if any, of the Goodland Savings and Loan Association in the property, being merely that of mortgagee, the house was not "the property of another person" within the meaning of the statute. The trial court thought differently and instructed the jury (No. 13) that if they found that the named mortgagee had a valid and existing real-estate mortgage on the house at the time in question, the house was "the property of another" within the meaning of count one.

The state argues that as a mortgagee possesses an "estate" or "interest" in the mortgaged property, therefore the words "property of another person" in the arson statute (21-581) embrace and include the house here in question, that is—it was the property of the mortgagee mentioned in count one within the meaning of the statute, and cites *Bodwell v. Heaton*, 40 Kan. 36, 38, 39, 18 Pac. 901, in support thereof.

Stated in simple terms, the question amounts to this:

A owns a dwelling house upon which B holds a mortgage. A willfully burns the house. Is A guilty of the offense of burning "the property of another person"—that is to say, is the house the property of B within the meaning of the statute?

The question is new in this state, and, strangely enough, apparently has not been answered by the courts of other jurisdictions. Counsel for neither side in this appeal has cited any authority touching the precise point and advise us that after diligent search none is to be found. Our own limited independent research also has proved fruitless.

Our Crimes Act (Chapter 21 of G. S. 1949), of which the statute involved is a part, gives us a definition of the term "property" to be applied in construing our criminal statutes.

21-129 reads:

"The term 'personal property' as used in this act shall be construed to mean goods, chattels, effects, evidences of right in action, and all written instruments by which any pecuniary obligation, or any right or title to property, real or personal, shall be created, acknowledged, assigned, transferred, increased, defeated, discharged, or diminished."

. 21-130 reads:

"The terms 'real property,' or 'real estate,' as used in this act, include every estate, interest, and right in lands, tenements and hereditaments."

21-131 reads:

"The term 'property' as used in this act includes 'personal property' and 'real property,' or 'real estate,' as defined in the last two sections."

In *The State v. Shaw*, 79 Kan. 396, 100 Pac. 78, 131 Am. St. Rep. 298, 21 L. R. A. (NS) 27, it was held that under the laws of this state the legal identity of husband and wife does not prevent a husband who burns his wife's house from being guilty of arson.

In *State v. Craig*, 124 Kan. 340, 259 Pac. 802, 54 A. L. R. 1233, the defendant was prosecuted on a charge of arson for the burning of a barn, being the barn of another person. It was owned by his mother, his brother, his sister and himself, as tenants in common, and it was held the fact that defendant himself owned an undivided fractional interest in the barn was of no consequence in considering the question of his guilt.

Neither of those cases, however, is the case before us.

67-201 provides that all persons owning lands not held by an adverse possession shall be deemed to be seized and possessed of the

same. 67-301 provides that in the absence of stipulations to the contrary, the mortgagor of real property may retain the possession thereof. It has been held many times that a mortgage on real property is a lien thereon; that it is merely an incumbrance of security for a debt; that title to the property remains in the mortgagor; that in the foreclosure of a mortgage on real property legal title to the property does not pass until the sheriff's deed is executed and delivered, and that a mortgage does not convey any interest in the land itself. (*Penn Mutual Life Ins. Co. v. Tittel,* 153 Kan. 530, Syl. 2, 111 P. 2d 1116 [opinion on motion for rehearing, 153 Kan. 747, 114 P. 2d 312], and *Mid-Continent Supply Co. v. Hauser,* 176 Kan. 9, 15, 269 P. 2d 453.)

Conceding, for the sake of argument, that in one sense of the word a mortgagee has an "interest" in the mortgaged property (the Bodwell case, *supra*), we are not here concerned with civil rights and liabilities growing out of the relationship, such as for acts of waste committed by the mortgagor, and the like. Our question is whether mortgaged real property is "the property of another person" (the mortgagee) within the meaning of the statute, 21-581.

We think the answer is to be found in the principles and rules applicable to criminal prosecutions generally, a primary one being that criminal statutes are to be given a strict construction. In *State v. Waite,* 156 Kan. 143, 131 P. 2d 708, 148 A. L. R. 874, which was a prosecution for operating a gambling device, the court had occasion to discuss the meaning of the word "property," in connection with the statutory definitions contained in 21-129, 130 and 131, *supra.* The question for determination in that case was of course different from the one now before us, but in syllabus 1 it was held that a rule of strict construction is to be applied to criminal statutes, and courts should not extend them to embrace acts or conduct not clearly included within the prohibitions of the statute.

The legislature has enacted at least six arson statutes (21-581 to 586), but in none of them has it seen fit to say that the burning by a mortgagor of the mortgaged real property is a burning of "the property of another," or that for purposes of the law of arson mortgaged real property is to be regarded as the property of the mortgagee. We are not dealing with any question of public policy— that is a legislative function, and whether the alleged offense charged in count one should be included within the ban of the statute is a matter for the legislature to decide.

In our opinion the dwelling house here involved was not the "property" of the mortgagee within the meaning of the statute, and therefore count one of the information does not allege a public offense.

It follows that the motion to quash count one should have been sustained, the giving of instruction No. 13 was erroneous, and it was error not to discharge defendant and to pass sentence on him insofar as that count is concerned.

This conclusion does not necessarily affect the proceedings based upon count two, for a defendant may procure a reversal as to a part of the counts on which he has been convicted although the judgment is affirmed as to the rest, and so it remains to determine whether any of the specifications of error affecting the conviction on count two are well founded. (*The State v. Miller*, 74 Kan. 667, 670, 87 Pac. 723; *The State v. Lumber Co.*, 83 Kan. 399, 401, 111 Pac. 484.)

With the exception of various arguments based on the contention count one does not allege a public offense, and with which we are in accord, other alleged errors are concerned with the entire trial, but are of minor importance and in our opinion contentions concerning them cannot be sustained. No useful purpose would be served by discussing them in detail. We have read the record carefully. No prejudicial error was committed in rulings on evidence, and there was nothing in the evidence with respect to count one that was inadmissible or in any way prejudicial to defendant with respect to the prosecution on count two. The slight "irregularity" in the polling of the jury was of no consequence. The identity of the state's exhibits, being articles removed from the house after the fire, was properly established. By express mandate of the statute (62-1718) this court, on appeal, is directed to render judgment without regard to technical errors, defects or exceptions which do not affect the substantial rights of a defendant.

Defendant contends that all of the evidence of the incendiary origin of the fire, and that he was the perpetrator thereof, was circumstantial, and that the state failed to establish a motive.

One short answer to this argument is that defendant overlooks the fact that a criminal offense may be established by circumstantial evidence as well as by that which is direct, and that, in the very nature of things, arson is very rarely committed in the presence of others. Ordinarily arson is committed alone and in secret, and the absence of direct evidence is no bar to a conviction of the offense.

With respect to motive, or lack of one, the evidence has been summarized and will not be repeated. The rule is that whether a defendant charged with a crime had an adequate motive for the commission of the act of which he is accused is a matter of evidence to be considered by the jury, and when the evidence is sufficient without proof of a motive to satisfy the jury beyond a reasonable doubt of the defendant's guilt, no motive need be shown. (*The State v. Hoel,* 77 Kan. 334, Syl. 5, 94 Pac. 267.)

Defendant's contention that the circumstantial evidence is insufficient to establish his guilt because such evidence might also be deemed compatible with innocence cannot be sustained. When considering on appeal the sufficiency of circumstantial evidence to sustain a conviction of crime, the question before this court is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That question was for the jury and trial court, and the function of this court is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt. (*The State v. Brizendine,* 114 Kan. 699, 220 Pac. 174; *State v. Murphy,* 145 Kan. 242, 65 P. 2d 342; *State v. Fouts,* 169 Kan. 686, 221 P. 2d 841.)

The evidence in this case was clearly sufficient to support the verdict of guilty on count two.

With respect to count one and proceedings thereunder, the judgment is reversed. With respect to count two and proceedings thereunder, the judgment is affirmed.

PARKER, C. J., dissents from paragraphs 2, 3 and 6 (1) of the syllabus and corresponding portions of the opinion.

JACKSON, J., not participating.