## HUCKABY v. STATE.

No. A—11285. Feb. 21, 1951.

Rehearing Denied April 4, 1951.

(229 P. 2d 235.)

J. M. Hill, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J.   The plaintiff in error, Thomas Robert Huckaby, hereinafter referred to as defendant, was charged by information filed in the district court of Tulsa county with the crime of rape in the first degree, was tried before a jury, convicted and his punishment assessed at 35 years in the State Penitentiary at McAlester.

The defendant was arrested June 8, 1948, but was not tried until February 4, 1949.   Prior to trial the prosecuting witness, Janie Marie Medlin and her father, Orville Medlin, filed a motion in the district court of Tulsa county setting out that Janie Marie was then fifteen years of age, weighed 140 pounds, and that a baby son had been born to her as a result of her relationship with defendant, and that Janie Marie desired to marry the defendant, and the court was requested to give his permission for such marriage.   Thomas Robert Huckaby also filed a request praying that the district judge permit him to marry Janie Marie, alleging that the girl and her father, stepmother and relatives were all agreeable to the marriage, and citing Tit. 43, § 3 of the 1947 statutes as authority for permission of the marriage.   The trial court refused to approve the marriage on account of the great difference in the ages of the parties.

On trial the testimony developed that Janie Marie Medlin was born January 16, 1934, that her mother died the next year, and the father, Orville Medlin, re-married in 1937; that the daughter went to live with her aunt, Dorothy Echols, who was to look after her while she attended school, but in September, 1947, the daughter went to Tulsa to live with her maternal grandmother, Janie Highbee, at 1634 East Admiral Boulevard, where the child stayed until June, 1948.

The grandmother testified that she was 50 years of age, had known the defendant as Bob Huckaby for about six years, and had kept company with him once for about six months, going to Hanford, Washington, with him, and worked out there for three months until she found out that Huckaby was married, when she broke up with him and returned to Oklahoma.   Witness denied that she had lived with defendant, or that she had ever had sexual relations with him.   Witness had twice married since she got back to Oklahoma, and had been married five times all told.   Witness testified that defendant and her last husband were good friends and that Huckaby often visited her home after her granddaughter came to live with her in September, 1947; that her husband operated a garage

at the rear of their residence and that Huckaby would visit them three or four times a week and then again he would not visit them over once a month; that the child was always glad to see defendant but witness noticed nothing out of the way. But finally she did notice the child vomiting in the mornings, and that she would not eat. So in the first week of June, 1948, she sent her to a physician for examination, and it developed that the child was pregnant.

Janie Marie Medlin testified at the time of the trial that she was fifteen years of age, that in the summer and fall of 1947 she lived with her grandmother in Tulsa; that in September she commenced attending grade school and that defendant, whom she had met at her grandmother's commenced driving his 1941 Packard car by the school in the afternoons and picking her up; that on September 23, 1947, he drove her out on North Lewis and parked north of the Allied Paint Company, one-half mile off the highway, and proceeded to have intercourse with her, and that this continued at the same place about every two weeks for a period of seven months, or until in May, 1948; that on June 4, 1948, a Dr. Rushing of Tulsa made an X-ray picture of her and found that she was pregnant; that defendant was the only person with whom she had ever had intercourse. She further testified that she had a son born to her on September 3, 1948; that after defendant was brought to the police station he told the policewoman in her presence that he would marry her; that he was reminded that he was already married, but he stated that he could arrange, and that he or his wife thereafter actually did obtain a divorce; that witness was thirteen and defendant 46 when their relationship commenced. Witness claimed that the officials had forced her to testify against the defendant, and had made her cry.

The arresting officers testified as to arresting defendant and his denial of the accusation, but that he expressed his willingness to marry Janie Marie, but on the ground that she loved him and that he was sorry for her.

Orville Medlin, father of Janie Marie, testified that his daughter weighed 135 or 140 pounds when she was thirteen years of age and was robust and strong. The defendant did not testify. The record indicates that defendant spent a little over seven months in jail prior to being admitted to bail.

For reversal, counsel for defendant sets out:

"That the said court erred in refusing to permit and allow the defendant, Thomas Robert Huckaby, to marry the state's witness Janie Marie Medlin, pursuant to, and in compliance with the statute of the State of Oklahoma, as found in Tit. 43, Art. 3, of the 1947 cumulative supplement to the statutes of the State of Oklahoma, wherein the law provides: '* * * and the courts may also authorize the marriage of persons under the ages herein mentioned, when the unmarried female is pregnant, or has given birth to an illegitimate child, whether or not any suits for seduction or bastardy have been brought' ".

The gist of the argument is that it was reversible error for the court, at the beginning of the trial, to refuse authorization for a marriage between defendant and the youthful victim. It is argued that the word "may" in sec. 3, Tit. 43, S. L. 1947, relating to marriages and permitting courts to authorize, under certain circumstances, the marriage of persons under age, must be construed as meaning "must", making it mandatory upon courts to authorize such marriages.

Counsel cites 59 C. J., page 1082, and a number of cases where "may" was construed as "must". We have read the cases cited, but are unable to determine that the Legislature intended such results in the statutory provision referred to.

An examination of the authorities indicate that such a marriage, if it had been permitted, would not have condoned the crime or operated to bar or abate the prosecution. Counsel, while taking it for granted that such marriage, if same permitted, would have barred prosecution, fails to establish such contention by authority. In fact, the rule is otherwise.

The Attorney General calls our attention to the case of State v. Newcomer, 59 Kan. 668, 54 P. 685, where a charge of statutory rape had been filed but later dismissed following the marriage of the parties. Afterwards the charge was again filed. The marriage was relied upon as a defense. The court held:

"In a prosecution for ravishing a female who was under 18 years, the fact that she has forgiven the accused, or has subsequently entered into the marriage relation with him, will not constitute a defense, nor relieve him from the consequences of the crime."

In the body of the opinion, the court said in part:

"In behalf of the defendant it is argued that the evil consequences of the unlawful act have been averted by the marriage; that, when the parties to the act voluntarily and in good faith entered into the marriage relation, the offense was condoned; and that the welfare of the parties and their offspring requires, and the interests of the public will be best subserved by, ending the prosecution. The difficulty with this contention is that the law does not provide that the offense may be expiated by marriage or condoned by the injured female. Her consent to the sexual act constitutes no defense, and neither her forgiveness nor anything which either or both may do will take away the criminal quality of the act, or relieve the defendant from the consequences of the same. The principle of condonation, which obtains in divorce cases, where civil rights are involved, has no application in prosecutions brought at the instance of the state, for the protection of the public, and to punish a violation of the law."

This rule has been approved by the Kansas court in the later cases of State v. Craig, 124 Kan. 340, 259 P. 802, 54 A. L. R. 1233, and State v. Dye, 148 Kan. 421, 83 P. 2d 113.

In Zell v. State, 189 Ind. 433, 127 N. E. 1, 9 A. L. R. 336, it was held:

"Subsequent marriage with the victim is no defense to a prosecution for statutory rape."

To the same effect is State v. Falsetta, 43 Wash. 159, 86 P. 168, 10 Ann. Cas. 177, and State v. Dejean, 159 La. 900, 106 So. 374.

The reason for the rule is stated in 22 C. J. S., Criminal Law, § 41, page 98 and see 16 C. J. 92 and being that "the status of an act as a crime is fixed when it is once completed, and the status cannot be changed by the subsequent act of the criminal or of third persons," or the reason is, as put by Prof. Wharton, 1 Wharton Criminal Law (11 Ed.) § 1 82: "that parties cannot by consent cancel a public law necessary to the safety and morality of the State."

Counsel in brief and at time this case was orally argued before this court pointed out that the defendant and Janie Marie Medlin were actually married soon after the conviction and that they now have a second child, and have been living happily as husband and wife in Tulsa, where defendant is regularly employed, and is a most devoted family man. The defendant and his wife and children appeared at time of oral argument and a number of laymen neighbors, ignorant of legal rules, have mailed in letters attesting to the industry of defendant and his devotion to his wife and children. Counsel has been most earnest in his plea, and discussion of the sociological aspects, pointing out the ill consequences that would probably follow the breaking up of this home should defendant have to serve time in prison. He treats the question of the care and

support of the children, calling attention to the background of the parties and their social standards. Frankly, by reason of the particular facts heretofore recited, our sympathy lies with the innocent children of this union as to their future welfare. We would do everything in our power to the end that each might have an opportunity to become useful and law-abiding citizens. Yet, our authority is circumscribed and limited by reason of the age of the girl involved at the time of the commission of the acts charged. The minimum sentence provided by statute, Tit. 21 O. S. A. § 1115, is fifteen years. We have authority to reduce this penalty by reason of Tit. 22 O. S. A. § 1066, and do reduce the same from 35 years to 15 years. We have no power under the facts in this case to do more. We do think this is a case, however, where the Pardon and Parole Board might consider the fact of the over seven months confinement of defendant in the jail, the fact of the birth of two children and the home life of the parties since marriage, defendant's employment and devotion to his family, and the possibility of a parole tending to insure the continued industry and devotion of defendant to his family, should the facts developed result in such parole.

By reason of the matters set out, this case is affirmed, but the sentence of 35 years is reduced to 15 years.

BRETT, P. J., and JONES, J., concur.