No. 58,691

State of Kansas, *Appellee*, v. Terrance Houck, *Appellant*.

(727 P.2d 460)

Opinion filed October 31, 1986.

*Jessica R. Kunen*, deputy appellate defender, argued the cause, and *Benjamin C. Wood*, chief appellate defender, was with her on the brief for appellant.

*Ann L. Smith*, assistant county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

Miller, J.: This is an appeal by Terrance Houck, following his conviction by jury trial in Montgomery District Court, of two counts of aggravated arson, K.S.A. 21-3718(1)(a), K.S.A. 21-3719; two counts of conspiracy to commit aggravated arson, K.S.A.

21-3302, -3718(1)(a) and -3719; one count of felony murder, K.S.A. 21-3401; and one count of felony theft, K.S.A. 21-3701(b). The controlling issue is whether the evidence was sufficient to establish the crime of aggravated arson under K.S.A. 21-3718(1)(a) and -3719.

Briefly, these are the facts. Terrance Houck owned two houses in Independence, Kansas, one located at 1328 West Chestnut, the other at 729 South 16th Street. On June 25, 1980, the house on Chestnut was damaged by fire. Albert Hughes was the tenant; he was inside the house when the fire was discovered. The Marysville Mutual Insurance Company had a policy of insurance covering the Chestnut Street property. Houck, as owner, was the named insured. He collected $4,900 from Marysville Mutual for his loss.

On January 29, 1981, fire destroyed the 16th Street property. Carl Clay was in the house when it burned, and he was killed. The house was uninsured, but the First National Bank of Elk City held a mortgage on it.

Arson was not suspected. The fire chief concluded that both fires were caused by careless smoking. Houck, meanwhile, was charged on August 28, 1980, and was convicted on March 5, 1981, of aiding and abetting arson and theft by deception. These charges arose out of yet a third fire. On December 21, 1981, he was placed on parole, and on June 3, 1982, his parole officer granted Houck's request and authorized him to move to Arkansas. There he reported to an Arkansas parole officer upon his arrival in that state, and he remained under the supervision of that officer.

An arson investigation was initiated in April or May, 1983, when Independence authorities received anonymous letters from someone in Arkansas. Two statements were taken from the defendant. The first, taken in Arkansas on May 22, 1983, covered the Chestnut Street fire. The second, taken in Independence on May 24, 1983, covered the 16th Street fire. In regard to the Chestnut Street fire, defendant told police officers that he was buying several houses from John Briggs, and the Chestnut Street house was insured through John's son, Robert Briggs, an insurance agent. Robert Briggs called him several times and finally defendant went in to see him. Robert Briggs suggested that the Chestnut Street house was insured and a fire at that address

might get the defendant out of debt. Houck said that he then talked with Michael Harris, and told Harris that if the house would accidentally burn the burning would be worth about $500. The house later burned and Houck collected on the insurance policy. Robert Briggs held out of the proceeds the money that Houck owed John Briggs (about $4,780), and Houck received a check from Robert Briggs for the balance, $120. In the May 22 statement, Houck denied ever talking to Harris about setting fire to the 16th Street house.

On the following day, May 23, Houck was returned to Kansas and on May 24, he gave a statement concerning the 16th Street fire. He stated that Suretta Beach, Carl Clay's lady friend, came to him and asked him to burn the 16th Street house so that Clay would die and she could collect on an insurance policy which she held on Clay's life. She insisted the fire occur on January 29, 1981. She promised Houck that she would pay him after she received the insurance money. She also told him that the windows and rear door were barred and that the fire should be started on the front porch so that Clay could not escape. Houck talked to Michael Harris and paid him $500 to set the fire and promised to pay him more when the job was finished. When Harris said he had no way to carry gasoline, Houck told him that there was a five-gallon gasoline can in the back of his truck. On the morning of January 29, Houck went to a coffee shop about 6:00 o'clock and then went down to 16th Street to get Clay out of the house. When Houck arrived, the house was already on fire. Houck went on to work. After the fire, Suretta Beach stopped him on his way home and told him she would pay him as soon as she got the insurance money. She never paid him anything. Both of these statements were received in evidence.

At trial, Suretta Beach was called as a witness for the State. She testified that the windows and back door of the 16th Street house were sealed for weatherization. She denied hiring anyone to burn the house, and testified that she had no life insurance on Clay. She denied collecting any insurance money after he died. Michael Harris was killed in 1982, and John Briggs died in August 1983, before this trial, and thus neither was available as a witness. Robert Briggs, called as a witness for the State, testified as to the insurance coverage, the proof of loss, and the disbursement of the policy proceeds. He was not asked if he suggested to Houck that he burn the house.

Two other witnesses, Gary and Michael VanGilder, testified that Houck approached them about burning a house. The witnesses, however, were unsure of the location of the target properties.

The first issue is whether the evidence was sufficient to sustain the convictions of aggravated arson, as charged in the second amended information. Both charges allege the damaging of a building *in which another person has an interest,* without the consent of such other person. Count No. 2 charges defendant with the aggravated arson of the 16th Street property "in which another person has an interest, to-wit: The First National Bank of Elk City, Kansas, without the consent of such other person . . . ."

Count No. 5 charges defendant with the aggravated arson of the Chestnut Street property "in which another person has an interest, to-wit: Marysville Mutual, Marysville, Kansas, and Albert Hughes without the consent of such other persons . . . ."

Arson is defined by K.S.A. 21-3718 as follows:

"**21-3718. Arson.** (1) Arson is knowingly, by means of fire or explosive:

"(a) Damaging any building or property *in which another person has any interest* without the consent of such other person; or

"(b) Damaging any building or property with intent to injure or defraud an insurer or lienholder.

"(2) Arson is a class C felony." (Emphasis added.)

Aggravated arson is defined by K.S.A. 21-3719 as follows:

"**21-3719. Aggravated arson.** Aggravated arson is arson, as defined in section 21-3718, and committed upon a building or property in which there is some human being.

"Aggravated arson is a class B felony."

Houck argues that neither the bank nor the insurance company had any interest in the property that burned. Our former statute, G.S. 1949, 21-581, prohibited the burning of the property of another person. In *State v. Crosby,* 182 Kan. 677, 324 P.2d 197 (1958), we were called upon to interpret that statute. Crosby was charged with burning a dwelling house which was the property of a savings and loan association by virtue of a certain mortgage held by it on that property. Defendant Crosby was the owner of and in possession of the property. Prior to the fire, he and his wife had executed a note and mortgage to the savings and loan association. On appeal, defendant contended that the interest, if

any, of the savings and loan association in the property, being merely that of a mortgagee, did not make the house "the property of another person" within the meaning of the arson statute. In reversing the conviction, our court said:

"[G.S. 1949] 67-301 [now K.S.A. 58-2301] provides that in the absence of stipulations to the contrary, the mortgagor of real property may retain the possession thereof. It has been held many times that a mortgage on real property is a lien thereon; that it is merely an incumbrance of security for a debt; that title to the property remains in the mortgagor; that in the foreclosure of a mortgage on real property legal title to the property does not pass until the sheriff's deed is executed and delivered, and that a mortgage does not convey any interest in the land itself. (*Penn Mutual Life Ins. Co. v. Tittel*, 153 Kan. 530, Syl. 2, 111 P.2d 1116 [opinion on motion for rehearing, 153 Kan. 747, 114 P.2d 312], and *Mid-Continent Supply Co. v. Hauser*, 176 Kan. 9, 15, 269 P.2d 453.)

"Conceding, for the sake of argument, that in one sense of the word a mortgagee has an 'interest' in the mortgaged property (the *Bodwell* case, *supra*), we are not here concerned with civil rights and liabilities growing out of the relationship, such as for acts of waste committed by the mortgagor, and the like. Our question is whether mortgaged real property is 'the property of another person' (the mortgagee) within the meaning of the statute, 21-581.

"We think the answer is to be found in the principles and rules applicable to criminal prosecutions generally, a primary one being that criminal statutes are to be given a strict construction. . . . [A] rule of strict construction is to be applied to criminal statutes, and courts should not extend them to embrace acts or conduct not clearly included within the prohibitions of the statute.

. . . .

"In our opinion the dwelling house here involved was not the 'property' of the mortgagee within the meaning of the statute, and therefore count one of the information does not allege a public offense." 182 Kan. at 683-84.

The *Bodwell* case, referred to in *Crosby*, is *Bodwell v. Heaton*, 40 Kan. 36, 18 Pac. 901 (1888). *Bodwell* was a civil action, by Heaton and others, to recover on promissory notes and an account from one F. M. Jolly. Bodwell filed an interplea, contending that he held a mortgage on the property from Jolly which was prior to the attachment issued on the judgment of Heaton. Our court held that a mortgagee has sufficient interest in the property to permit his interpleader when the real estate is attached. We said:

"A mortgage upon such property is a lien upon it, and although the mortgagee has no rights of possession or title to the land, he certainly has an interest in it, and under the statutory definition a mortgagee has property in the land mortgaged, so that he may interplead in any cause in which it is sought to be taken." 40 Kan. at 38.

The information here charged that the First National Bank had

an interest in the 16th Street property. It held a mortgage and was thus "interested" in the property as security for its loan. The issue here is whether the mortgagee held an interest in the building or property under the specific language of K.S.A. 21-3718(1)(a). Reading the statute in its entirety, we note that the following subsection (b) makes it an offense to knowingly, by means of fire or explosive, damage any building or property with intent to injure or defraud an insurer or lienholder. Obviously, the Bank was a lienholder and the burning of the house with intent to defraud the mortgagee would constitute a violation of subsection (b). If, as the State argues, subsection (a) prohibits destruction of mortgaged property, we fail to see why the legislature would make it a separate crime to destroy mortgaged property with intent to defraud the mortgagee by enacting subsection (b).

The statements in the first quoted paragraph from the *Crosby* opinion are still true. A mortgagee has a lien, not an ownership interest in the land. Construing subsection (a) strictly, as we are required to do in the case of criminal statutes, we hold that a mortgagee does not have an interest in the property upon which it holds a mortgage, within the meaning of K.S.A. 21-3718(1)(a).

Similarly, does the "interest" of the insurance carrier, Marysville Mutual, constitute an "interest" in the Chestnut Street property within the meaning of K.S.A. 21-3718(1)(a)? Its "interest," if any, is specifically protected by subsection (b). Insurance is a matter of contract. The insurance carrier has an interest in the contract and in the premiums. It has no legal interest in the insured property. We hold that an insurer does not have an interest in the property it insures, within the meaning of K.S.A. 21-3718(1)(a).

Appellant, despite the arguments of the State to the contrary, is not challenging the information; he is challenging the sufficiency of the evidence to convict him of the specific charges of aggravated arson made against him in the information—knowingly, by means of fire or explosive, damaging a building *in which another person has an interest*, without the consent of such other person. For the reasons stated above, we hold that neither the mortgagee nor the insurance carrier had an interest under K.S.A. 21-3718(1)(a) in the property destroyed. Whether the State's evidence would or would not be sufficient to prove a

charge under K.S.A. 21-3718(1)(b) is an academic question not properly before us. The State has the responsibility to appropriately charge the accused with the crime it believes the accused has committed. If the evidence introduced at trial does not support a conviction of the offense charged, the accused cannot be found guilty of some other offense which the State did not see fit to charge. Here, the State did not prove the charges it brought against Houck and, therefore, the convictions of aggravated arson must be reversed.

The defendant next contends that the State's failure to charge him for almost three years after the crimes occurred resulted in a delay which prejudiced him and denied him due process under the United States Constitution. He first argues that his absence from the state did not toll the running of the statute of limitations. The statute of limitations for the charges at issue is two years. K.S.A. 21-3106(2). That statute specifically provides, in subsection (3), that the period within which a prosecution must be commenced shall not include any period in which "[t]he accused is absent from the state." Thus, if the period during which Houck was in Arkansas is excluded, this prosecution was timely.

Defendant argues that he was on parole and under the joint supervision of Kansas and Arkansas parole officers during all the time that he was in Arkansas. He contends that he was in the "constructive custody" of the State of Kansas and the State could have contacted him at any time or could have returned him to Kansas if it wished. There is no dispute, however, that Houck voluntarily sought leave to move to Arkansas. He left the state of his own free will and remained out of state as a personal choice during the period in question. He was not ordered to leave the state; he was granted permission upon his request.

K.S.A. 1985 Supp. 22-3717(h) provides in applicable part that: "Every inmate while on parole shall remain in the legal custody of the secretary of corrections and is subject to the orders of the secretary." In *Johnson v. Stucker*, 203 Kan. 253, 259, 453 P.2d 35, *cert. denied* 396 U.S. 904 (1969), an action in habeas corpus, we observed that while it is true that a paroled prisoner is one conditionally released from actual custody, he remains in " 'legal custody' of the institution from which he is released, and constructively is a prisoner of the state." Similarly, one who is released on bond or other recognizance after conviction in a state

court is held to be "in custody" within the meaning of the federal habeas statute. See *Hensley v. Municipal Court*, 411 U.S. 345, 36 L. Ed. 2d 294, 93 S. Ct. 1571 (1973). Though Houck may have been "in custody" of the State for the purposes of habeas corpus, he was not in actual custody. With the consent of his parole officer, he elected to move out of state.

We have reviewed the cases cited by counsel, but find them distinguishable. A review of the cases dealing with prisoners held out of state, and servicemen absent from the state, would not be helpful. We have found no case involving facts similar to those at hand. It seems to us that the defendant is in no better position than a person not on parole, who voluntarily absents himself from the state, and whose whereabouts are known by the Kansas officers. Should the statute be tolled as to one and not the other? We think not. We hold that Houck was voluntarily absent from the state and thus the two-year statute of limitations was tolled during his absence. The prosecution was timely commenced.

Houck also argues that due process requires dismissal because the preindictment delay caused substantial prejudice to his rights. We discussed a similar claim and the law applicable thereto in *State v. McCorgary*, 224 Kan. 677, 681-84, 585 P.2d 1024 (1978). In that opinion we reviewed the leading federal cases as well as our own on the point. In *McCorgary*, there was an eleven-year lapse of time between the murder and the commencement of the prosecution. Some of the principles set forth therein are as follows: (1) To prosecute a defendant following investigative delay does not deprive him of due process even if his defense might have been somewhat prejudiced by the lapse of time; (2) a due process inquiry must consider the reasons for the delay as well as the prejudice of the accused; and (3) prosecutorial delay solely to gain tactical advantage over the accused would violate due process.

In this case, as in *McCorgary*, there is not the slightest indication that the delay by the State was for the purpose of gaining tactical advantage. To the contrary, the State had no suspicion of arson until it received anonymous letters some sixty days or less prior to the time this prosecution was commenced. Once the State was alerted, its investigation moved promptly and charges were filed on May 20, 1983. Defendant contends that he was

prejudiced because two witnesses, John Briggs and Michael Harris, died before the case was tried. Michael Harris, the alleged coconspirator, died of gunshot wounds approximately one year before the charges were filed. John Briggs died shortly after the charges were filed, but prior to trial. John Briggs, a former employer of the defendant, was the former owner of one of the properties and the defendant owed him money at the time the Chestnut Street property was destroyed. Briggs received a substantial portion of the insurance proceeds, as we have stated above. That evidence came in through the testimony of his son, Robert Briggs. Defendant does not allege that John Briggs had any information as to the conversations between the defendant and Robert Briggs, or that John Briggs could have disputed any of the State's evidence at trial. Michael Harris, on the other hand, allegedly conspired with the defendant and set fire to both properties at defendant's request. He was an important witness both for the State and for the defense, depending on his testimony. There is no indication, however, that the State was in any way responsible for his death or that the State deliberately delayed prosecution until after his demise. Upon the facts before us, we hold that defendant was not denied due process by the preindictment delay.

Defendant next contends that his "uncorroborated" confession is not sufficient to establish the elements of the offenses charged against him, in the absence of sufficient proof of the corpus delicti. In view of our disposition of this case, we need not reach this issue.

Defendant contends that the written instructions to the jury defining aggravated arson and the lesser included offense of arson were clearly erroneous. Instruction No. 22 attempts to set forth the elements of the crime of aggravated arson as charged in count No. 5 of the information, relating to the destruction of the Chestnut Street property. The trial court's instruction omits the phrase of "knowingly, by means of fire or explosive," a necessary element of aggravated arson when charged under K.S.A. 21-3719 and -3718(1)(a). In charging the jury in a criminal case, it is the duty of the trial court to define the offense charged, stating the essential elements of the crime either in the language of the statute or in appropriate language of the court. This instruction, omitting an essential element, was erroneous. However, it was

not objected to at trial. When an instruction has not been objected to at trial, this court's scope of review is limited to a determination of whether the instruction is clearly erroneous. An instruction is clearly erroneous when a reviewing court reaches a firm conviction that if the trial error had not occurred, there was a real possibility the jury would have returned a different verdict. *State v. Maxwell,* 234 Kan. 393, Syl. ¶ 5, 672 P.2d 590 (1983); *State v. Stafford,* 223 Kan. 62, Syl. ¶ 2, 573 P.2d 970 (1977). We note that the trial court did not omit this element in defining aggravated arson concerning the 16th Street property. Nor did the trial court omit that element in defining the lesser included offense of arson. We also note that the trial court erred in its instruction of the lesser included offense of arson of the Chestnut Street property when it substituted the First National Bank for the Marysville Mutual Insurance Company, which the State charged had an interest in that property. However, in light of our final disposition of this case, we need not determine whether these instructional errors were clearly erroneous and reversible error.

Five of the offenses charged were related to or arose out of the alleged aggravated arson. All stand or fall upon the sufficiency of the proof of the aggravated arson charges. Count I charged conspiracy to commit aggravated arson, which is defined in the information in pertinent part as "knowingly by means of fire . . . damaging any building . . . in which another person has an interest without consent of such other person . . . ." and describing the 16th Street residence. As we have already held, the evidence did not establish that *another person* had an interest in that property. Count II charged aggravated arson of the 16th Street residence "in which another person has an interest, to-wit: The First National Bank of Elk City . . . ." As discussed above, the evidence was insufficient to establish that offense.

Count III charged first-degree felony murder, the killing of Carl Clay "while perpetrating the felony crime of aggravated arson . . . *as stated in Count II of this Information which is hereby incorporated into this Count by reference* . . . ." The felony upon which the charge was founded was not established by the evidence.

We are not unmindful of our prior holding that one convicted of felony murder need not be charged with and convicted of the

underlying felony. See *State v. Wise,* 237 Kan. 117, 122, 697 P.2d 1295 (1985). In that opinion we cited a New York case, *People v. Murray,* 92 App. Div. 2d 617, 459 N.Y.S.2d 810 (1983), in which it was held that an acquittal of the underlying felony is not inconsistent with a conviction of felony murder. In the case at hand, however, there is no evidence that Houck committed, attempted to commit, or conspired to commit *the specific felony* upon which the State relied—the burning of a dwelling house in which some other person had an interest. Absent proof of this offense, the homicide conviction cannot stand.

Counts IV and V charged conspiracy to commit aggravated arson and the aggravated arson of the Chestnut Street residence in much the same manner as Counts I and II were drafted. These counts were based upon the premise that Marysville Mutual had an interest in the property, which the evidence fails to establish. Defendant's conviction of the offenses charged in those counts must likewise be reversed.

Defendant was charged in Count VI and convicted of theft by deception of the $4,900 he received from the insurance company. We find no direct interrelation between that conviction and the errors which pervade the others. The evidence was sufficient to sustain this conviction.

For the reasons stated, the convictions of conspiracy to commit aggravated arson (Counts I and IV), aggravated arson (Counts II and V), and felony murder (Count III) are reversed. The conviction of theft by deception (Count VI) is affirmed.

SCHROEDER, C. J., and HERD, J., dissent from Syllabus ¶¶ 1 and 2 and the corresponding portions of the opinion.