No. 102,688

STATE OF KANSAS, *Appellee*, v. OLIVER MCWILLIAMS, *Appellant.*

(283 P.3d 187)

Opinion filed August 17, 2012.

*Reid T. Nelson*, of Capital and Conflicts Appeal Office, argued the cause and was on the brief for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Jabari B. Wamble*, assistant attorney general, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

NUSS, C.J.: This case requires us to determine whether sufficient evidence exists to support the bench trial conviction of Oliver McWilliams (McWilliams) under K.S.A. 21-3846(a)(1) for defrauding the Medicaid program. Because we conclude that it does, we affirm the district court and reverse the Court of Appeals.

### FACTS

Mary McWilliams is a Medicaid beneficiary who received Medicaid's "Home and Community Based Services." Under the program she received help with her day-to-day life activities, including assistance from "personal care attendants" (PCAs). Mary had two PCAs—her husband, Oliver McWilliams, and her daughter, Sharnette McWilliams. While a beneficiary's spouse generally may not provide services per K.A.R. 30-5-307, McWilliams apparently received a spousal exemption under the regulation.

McWilliams submitted his work timesheets to SKIL, a payroll agency, which then submitted the paperwork to Medicaid. After deductions by SKIL, he received $7.75 net per hour for his daytime services and a $20 payment for overnight "sleep cycle support."

As stated in a form McWilliams signed as part of his enrollment with SKIL, Medicaid prohibits PCAs from providing services to the Medicaid beneficiary while the beneficiary is in a hospital. The form also advises of the prohibition against PCAs submitting a claim to be paid for that time. Yet McWilliams claimed payment for 182.98 service hours and 76 sleep cycles while Mary was hospitalized. And Medicaid paid for these hospital hours.

After an investigation into McWilliams' timesheets, the State charged both Sharnette and McWilliams with Medicaid fraud and tried them separately. Count I of the first amended complaint/information charged McWilliams with engaging in a conspiracy with Sharnette to defraud Medicaid. Count II essentially charged him with defrauding Medicaid in the amount of $3,704.78 by submitting a false claim for the hospital hours:

"Oliver McWilliams, for himself, did then and there, unlawfully, feloniously, knowingly, and with the intent to defraud, engage[] in a pattern of . . . submitting . . . false or fraudulent statements . . . for services for which payment may be made, in whole or in part, under the Kansas Medicaid program, whether or not the claims for payment for services is allowed or allowable . . . to wit; In violation of K.S.A. 21-3846(a)(1), Oliver McWilliams did knowingly and intentionally and with the intent to defraud, . . . submit[ ] . . . to the Kansas Medicaid program, false and fraudulent statements, representations, books, records, documents and claims for personal care services which were not provided by Oliver McWilliams, and were therefore not allowable under the Kansas Medicaid program. As a result

of said conduct the Kansas Medicaid program paid $3,704.78, which should not have been paid."

At the bench trial, McWilliams did not dispute that he had claimed payment for hospital hours. But he argued that Mary needed PCA support to receive adequate care while hospitalized because she was "about dead." He further testified that her case manager, Lawrence Reece—who did not testify and was described by McWilliams as "the boss"—permitted him to claim payment for hospital hours. McWilliams also testified that he was not aware of Medicaid's ban on PCA hospital hours until the State began the fraud investigation. SKIL employee Rebecca Lemon testified for the State that Medicaid makes "no allowance for someone who is hospitalized" to receive personal care services.

The district court acquitted McWilliams of the conspiracy charge. But it found him guilty of fraudulently billing Medicaid for the hospital time. The court primarily based its ruling on the "Personal Care Attendant Acknowledgement" form which it found that McWilliams had signed. It quoted the form's language: "Under no circumstances will Personal Care Attendants be authorized to provide services nor submit hours for the time that an employer is hospitalized or receiving any other institutional care." The court found this language "to be pretty compelling in support of a conviction for Count II" because the form "clearly, unequivocally, very specifically says that under no circumstances may a personal care attendant provide services to the employer/patient while the employer/patient is hospitalized."

In addition to this language, the court also emphasized that this form signed by McWilliam states:

"I have read and understand the information provided in the Personal Care Attendant Acknowledgement and I agree to perform my duties as a Personal Care Attendant accordingly. I further understand my responsibility to record accurate and timely information in correlation to the information provided."

The court then sentenced McWilliams to 12 months' probation with an underlying sentence of 6 months in jail and ordered restitution of $3,704.78 and court costs.

The Court of Appeals reversed McWilliams' conviction, holding that the evidence at trial did "not support a guilty finding for the specific act charged in the complaint." *State v. McWilliams*, No. 102,688, 2010 WL 3564738, at *2 (Kan. App. 2010) (unpublished opinion) *rev. granted* November 5, 2010. More particularly, it adopted McWilliams' contention: he "specifically argues the complaint charges that he submitted statements for services he *did not provide*, while the evidence establishes that he actually *did* provide the services for which he submitted statements." (Emphasis added.) 2010 WL 3564738, at *2.

We granted the State's petition for review. Our jurisdiction is under K.S.A. 20-3018(b).

ANALYSIS

Issue: *Sufficient evidence supports McWilliams' conviction for Medicaid fraud.*

### Standard of Review

In analyzing this issue we consider "whether, after review of all the evidence, viewed in the light most favorable to the prosecution, [we are] convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Gutierrez*, 285 Kan. 332, 336, 172 P.3d 18 (2007).

### Discussion

The State's complaint/information charged McWilliams with making a false or fraudulent Medicaid claim in violation of K.S.A. 21-3846(a)(1), which states:

"(a) Making a false claim, statement, or representation to the medicaid program is, knowingly and with intent to defraud, engaging in a pattern of making, presenting, submitting, offering or causing to be made, presented, submitted or offered:

(1) Any false or fraudulent claim for payment for any goods, service, item, facility, accommodation for which payment may be made, in whole or in part, under the medicaid program, whether or not the claim is allowed or allowable."

The State asserts that it proved beyond a reasonable doubt that McWilliams (1) knowingly and with intent to defraud, (2) submitted a false or fraudulent claim for payment of services under the

Medicaid program, and (3) received between $1,000 and $25,000 in illegal payments. See PIK Crim. 3d. 60.40.

McWilliams responds that the State has not established an intent to defraud because he received permission to provide the service in the hospital. He also asserts that he did not defraud Medicaid because he actually provided the services claimed on his timesheets for payment. Both of his points will be addressed in turn.

A. *Sufficient evidence supports McWilliams' intent to defraud Medicaid with a false claim.*

In 1965, Congress established Medicaid in Title XIX of the Social Security Act, now codified as amended at 42 U.S.C. § 1396 *et seq.* (2006). Medicaid is jointly funded by the federal government and participating States to provide medical assistance to certain categories of low income individuals.

The Code of Federal Regulations defines "personal care services" under Medicaid as

*"services furnished to an individual who is not an inpatient or resident of a hospital,* nursing facility, intermediate care facility for the mentally retarded, or institution for mental disease that are—

(1) Authorized for the individual by a physician in accordance with a plan of treatment or (at the option of the State) otherwise authorized for the individual in accordance with a service plan approved by the State;

(2) Provided by an individual who is qualified to provide such services and who is not a member of the individual's family; and

(3) Furnished in a home, and at the State's option, in another location." (Emphasis added.) 42 C.F.R. § 440.167(a); accord 42 U.S.C. § 1396d(a)(xvii)(24) (2006).

Against this backdrop, McWilliams argues that he did not intend to violate Medicaid and accompanying Kansas law because he received permission from Lawrence Reece to provide the hospital services and to file those claims for payment. The State responds that intent may be inferred from " ' "acts, circumstances, and inferences reasonably deducible therefrom." ' " *State v. Martinez*, 290 Kan. 992, 1004, 236 P.3d 481 (2010). And evidence of intent can be found in the "Personal Care Attendant Acknowledgement" form that McWilliams signed.

The district court accurately found the form clearly provides that "[u]nder no circumstances will [PCAs] be authorized to provide services nor submit hours for the time that an employer is hospitalized or receiving any other institutional care." The form is echoing Medicaid law which prohibits payment for services provided in a hospital. The form also contains McWilliams' signed acknowledgment that he had read and understood the form, his agreement to perform his duties in accordance with the form's provisions, and his acknowledgment of his responsibility to record accurate and timely information.

Consequently, we hold that the district court, as the finder of fact, could reasonably infer from this evidence that McWilliams' later-submitted claims for payment for hospital hours sufficiently demonstrated his intent to defraud the Medicaid program. See *Martinez*, 290 Kan. at 1004. Reweighing this evidence with the conflicting evidence emphasized by McWilliams is not our function. See *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011) (stating "we do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses" when reviewing a conviction for sufficient evidence).

### B. *Sufficient evidence supports the conviction.*

As mentioned, the State's complaint/information against McWilliams alleged in relevant part that

"[i]n violation of K.S.A. 21-3846(a)(1), Oliver McWilliams did knowingly and intentionally and with the intent to defraud, . . . submit[ ] . . . to the Kansas Medicaid program, false and fraudulent statements, representations, books, records, documents and claims for personal care services which were not provided by Oliver McWilliams, and were therefore not allowable under the Kansas Medicaid program."

McWilliams primarily argues that the State has insufficient evidence to convict him of Medicaid fraud because it could not prove that he made a false statement. See *Slaymaker v. Westgate State Bank*, 241 Kan. 525, Syl. ¶ 2, 739 P.2d 444 (1987) (fraud requires an untrue statement known to be untrue by the party making it). More specifically, he argues that because he actually provided the services during his wife's hospitalization, he could not be prose-

cuted for an offense alleging he falsely submitted claims for services not provided. So his conviction must be overturned. As mentioned, the Court of Appeals adopted this argument.

McWilliams argues we should follow the panel's specific lead and analogize his case to *State v. McMannis*, 12 Kan. App. 2d 464, 747 P.2d 1343 (1987) *rev. denied* 242 Kan. 905 (1988). There, the Court of Appeals reversed McMannis' conviction because while he indisputably had possessed methamphetamine, he instead was charged with, and convicted of, possession of amphetamine with intent to sell. The panel correctly observed that methamphetamine and amphetamine are "listed separately under Schedule II of the Controlled Substances Act. K.S.A. 1986 Supp. 65-4107(d)(1) and K.S.A. 1986 Supp. 65-4107(d)(3)." 12 Kan. App. 2d at 465. The panel therefore concluded the jury's verdict was not supported by substantial evidence.

The *McMannis* court substantially relied on our reasoning in *State v. Houck*, 240 Kan. 130, 727 P.2d 460 (1986). In *Houck*, the defendant burned two homes, one that was insured and one that was subject to a mortgage. He was charged with, and convicted of, aggravated arson which, as elected by the State in the complaint, required proof under K.S.A. 21-3718(1)(a) (Weeks 1974) of damage to a building or property in "which another person has any interest without the consent of such other person."

On appeal, we determined that as a matter of law, neither the insurance company nor the mortgagee had a property interest in the homes. So the evidence at trial did not support a conviction for the offense charged. We noted that by contrast K.S.A. 21-3718(1)(b) (Weeks 1974) covered "damage[ing] any building or property with intent to injure or defraud *an insurer or lienholder*" yet was not the basis for the State's charge. (Emphasis added.) 240 Kan. at 135. We concluded:

"Whether the State's evidence would or would not be sufficient to prove a charge under K.S.A. 21-3718(1)(b) is an academic question not properly before us. *The State has the responsibility to appropriately charge the accused with the crime it believes the accused has committed. If the evidence introduced at trial does not support a conviction of the offense charged, the accused cannot be found guilty of some other offense which the State did not see fit to charge.* Here, the State did

not prove the charges it brought against Houck and, therefore, the convictions of aggravated arson must be reversed." *Houck*, 240 Kan. at 135-36.

The panel essentially agreed with McWilliams' contention that just as the evidence was insufficient to convict the defendants in *McMannis* and *Houck* of their charged offenses, there was insufficient evidence that he submitted a claim for "services which were not provided" because he did provide all of the services claimed on his timesheets. The panel held that he

"was charged with making claims for *services* 'which were not provided by Oliver McWilliams.' All the evidence establishes he did, in fact, provide the *services* he billed for. Because the record lacked evidence to prove that he did not provide the *services*, his conviction cannot stand." (Emphasis added.) *McWilliams*, 2010 WL 3564738, at *5.

But as the State contends, these conclusions are the result of incomplete analyses. And in our review, we discern no meaningful parallels between McWilliams' situation and those defendants in *McMannis* and *Houck*, as explained below.

Stated plainly, the State's complaint/information did not charge McWilliams with simply submitting statements for general "services" he did not provide. Rather, the complaint/information specifically charged him with submitting statements "for *personal care services* which were not provided by Oliver McWilliams, and were therefore not allowable under the Kansas Medicaid program." (Emphasis added.) As discussed above in Section A, "personal care services" do not, and cannot, include services provided to a hospitalized beneficiary. See, *e.g.*, 42 C.F.R. § 440.167(a) ("Personal care services means services furnished to an individual who is not an inpatient or resident of a hospital . . . .")

Accordingly, the services McWilliams indisputably performed in the hospital simply were not "personal care services." And he previously signed the form expressly acknowledging that he was not authorized to provide the hospital services. So his representation that he had performed personal care services during those times would be knowingly false. This alone is ample evidence of the specific fraud element that McWilliams contends is insufficient for conviction: the untrue statement known to be untrue by the party

making it. See *Slaymaker*, 241 Kan. 525, Syl. ¶ 2 (element of fraud is an untrue statement known to be untrue by the party making it and made with the intent to deceive).

Because McWilliams did not perform personal care services, he is not entitled to be paid by Medicaid for performing them. And he previously signed the form expressly acknowledging that he was not authorized to submit hours for his hospital services. So his claims submission seeking payment for performance of personal care services in the hospital would also be knowingly false. This too is ample evidence of fraud, *e.g.*, the intent to deceive. See *Gutierrez*, 285 Kan. at 336 (when reviewing sufficiency of evidence claim on appeal, evidence is viewed in light most favorable to the prosecution). We end this analysis by noting that the precise statute the complaint/information charged McWilliams with violating, K.S.A. 21-3846(a)(1), unambiguously prohibits the submission of "false or fraudulent claim[s]" to Medicaid. See *McMannis*, 12 Kan. App. 2d 464, Syl. ¶ 3 ("The facts alleged in an indictment or an information must constitute an offense within the terms and meaning of the statute upon which the offense is based.").

In short, we reject McWilliams' sole claim on appeal: that the evidence is insufficient to prove the fraud element that requires him to make an untrue statement with the intent to deceive, *i.e.*, that the evidence did not support the specific crime charged. His conviction is therefore affirmed.

The judgment of the Court of Appeals reversing the district court is reversed. The judgment of the district court is affirmed.

\* \* \*

JOHNSON, J., dissenting: I respectfully dissent. The Court of Appeals got it right. The State charged McWilliams with submitting claims to Medicaid for services that he did not render, but the evidence failed to refute that McWilliams did, in fact, provide those claimed services to his wife, albeit the services may not have been authorized for Medicaid payment.

There is a huge difference between claiming reimbursement for services which were never provided and claiming reimbursement for services that were provided in good faith, but which were not

defined as authorized "personal care services" under applicable federal regulations. The former might justify a criminal prosecution for fraud; the latter only justifies a civil action for reimbursement of unauthorized payments. If that distinction does not exist, there are millions of income tax payers, awash in a sea of confusion over Internal Revenue Code provisions and regulations, that are in danger of acquiring a criminal record through ignorance.

The majority pays lip service to the definition of the fraud element: an untrue statement known to be untrue by the party making it and made with the intent to deceive. But then the majority finds the evidence sufficient to establish that McWilliams knew he was not authorized to submit the claim, notwithstanding permission from his "boss," because an acknowledgment form he signed at some point said not to submit a claim for services while the employer was hospitalized. Apparently, the majority believes that constructive knowledge is sufficient to put someone in prison for fraud; I don't. Further, the majority apparently believes that all personal care attendants (PCAs) should know intuitively that the information contained in the acknowledgment form that they sign when commencing their duties is not waivable by anyone under any circumstances, no matter how critically ill the employer might be. Otherwise, where is the evidence of an intent to deceive here when the uncontroverted testimony of McWilliams was that his "boss" knew about and authorized the claims?

Granted, we should not reweigh the evidence. But the evidence must be sufficient to support the crime with which the defendant was actually charged; it is not enough that the evidence could have supported another after-the-fact theory of prosecution that the State may have developed for appeal purposes. See *State v. Jones*, 242 Kan. 385, 397, 748 P.2d 839 (1988) ("When the information alleges one or more theories for commission of the crime, the general rule is that the instructions should be confined to the charges contained in the information and should not be broader or narrower than the information."). Moreover, K.S.A. 22-3201(b) requires that the complaint "shall be a plain and concise written statement of the essential facts constituting the crime charged."

" 'The purpose of the information in a criminal case is to advise the accused and the court of the charges alleged to have been committed and the essential facts constituting the crime charged. *State v. Carpenter*, 228 Kan. 115, 612 P.2d 163 (1980). In a felony action, the information is the jurisdictional instrument upon which the accused stands trial. An information must be stated with enough clarity and detail to inform a defendant of the criminal act with which he is charged. *City of Altamont v. Finkle*, 224 Kan. 221, 579 P.2d 712 (1978). The failure to so inform the defendant denies the defendant procedural due process and violates his right to be informed of the charges against him. K.S.A. 22-3205; Kansas Const. Bill of Rights, § 10; U.S. Const., 6th Amend.; *State v. Daniels*, 223 Kan. 266, 573 P.2d 607 (1977).' " *State v. Garrison*, 252 Kan. 929, 934, 850 P.2d 244 (1993) (quoting *State v. Snyder*, 10 Kan. App. 2d 450, 457-58, 701 P.2d 969 [1985]).

As the majority recites twice, the complaint here alleged that McWilliams submitted claims for personal care services "which were not provided." A plain reading of the charging document would inform a rational, ordinary defendant that he or she had not done the work for which he or she was claiming payment from Medicaid. In that regard, the State simply did not prove that McWilliams did not provide the services he claims to have provided to his hospitalized wife.

On the other hand, the State's charging document did not allege that McWilliams knowingly attempted to claim payment for unauthorized services rendered, *i.e.*, that McWilliams knew the care he was giving his hospitalized wife was not reimbursable under Medicaid but submitted a claim anyway. To compensate for that shortcoming, the State asserts a newfound theory on appeal that "personal care services" is a term of art that does not apply to any services provided to a hospitalized employer, even if the acts performed were previously referred to as personal care services when performed at home. In other words, the State and the majority would require McWilliams to know that the term "personal care services," when used in the complaint, had the narrow and precise definition recited by the majority from 42 C.F.R. § 440.167(a). But that position is contradicted by the acknowledgment form to which the majority ascribes so much importance. That form simply refers to a PCA not being "authorized to provide *services* . . . for the time that an employer is hospitalized." (Emphasis added.) If the use of

the term "personal care services," by definition and without more, means the exclusion of any services provided to a hospitalized employer, as the State and the majority assert, why would the acknowledgment form tell PCAs they cannot provide "services" to a hospitalized employer?

In my view, the majority has found sufficient evidence to support a conviction based upon a theory of prosecution that the State neither alleged nor proved at trial. To me, that is not due process. I would affirm the Court of Appeals.