NOT DESIGNATED FOR PUBLICATION

No. 113,852

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS
*Appellee*,

v.

ERICA C. RICKE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; ROBERT W. FAIRCHILD, judge. Opinion filed September 9, 2016. Reversed.

*Randall L. Hogkinson*, of Kansas Appellate Defender Office, for appellant.

*Natalie Yoza*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., MCANANY and GARDNER, JJ.

*Per Curiam*: Erica C. Ricke contends that insufficient evidence supports her conviction of theft by deception. Although her initial information charged her with theft by unauthorized control, the State amended the information to charge her with theft by deception. During trial, the State introduced evidence of theft by unauthorized control, and the jury instructions and verdict form related solely to that crime. But the journal entry states Ricke was convicted of theft by deception. Under these unusual circumstances, we agree with Ricke that insufficient evidence supports her conviction of theft by deception.

1

*Procedural and factual background*

Erica C. Ricke was an employee of Gage Management, Inc., a business that managed approximately 500 rental properties. Sometime around 2007 or 2008, Ricke was trained to collect rent checks and cash payments from tenants and deposit the payments into the correct property owner's account. Ricke had full access to PropertyBoss, the property management software at Gage Management. PropertyBoss was used to track when a tenant's rent was due and when the tenant paid in full. A Gage Management employee would enter the payment into the system, bringing the tenant's balance to zero. Each employee had a unique login to PropertyBoss and was granted a different level of access. Ricke had full access, meaning she could "do anything that needed to be done, as far as entering transactions, entering rent, printing out deposit slips, deleting or voiding transactions."

David Gage, owner of Gage Management, linked PropertyBoss to QuickBooks. Either Gage or the former office manager, Sara Reginer, used QuickBooks to reconcile the accounts. This was done by comparing the bank statements with the information entered in QuickBooks and verifying the zero balance. If the accounts could not be reconciled, Gage would investigate the issue. Ricke was not trained to use QuickBooks.

Gage used a law firm to manage evictions and to collect previous tenants' past due accounts. Once the property was re-rented, Gage Management would write off the previous tenant's debt as bad debt in PropertyBoss. If the collections firm successfully collected payments on a delinquent account, it took a percentage of the payment and sent the remainder in a monthly check to Gage Management. Because these checks included collections from multiple past tenants, the money had to be split between the different property owners' accounts.

The collection checks were considered extra money that the business was not expecting. The collections firm sought Gage's approval before accepting a settlement for a previous tenant's debt. Gage had no way of knowing whether the settlement payments were actually received unless his employee "logged in that this check was received."

In January 2011, the collection firm sought and received Gage's approval for a settlement on a past due account in the amount of $4,500. Gage was the only person with access to this particular property owner's account. Gage did not receive the settlement check, however, in June or July he asked Ricke if she had received it. Ricke denied having received it and offered to contact the collection firm. In November 2011, Gage contacted the firm himself and the firm sent a copy of the check showing Gage Management had deposited the check in March 2011.

Gage discovered the check had been improperly deposited in a current property owner's account as rent, rather than into the correct property owner's account as income. Ricke was the only person in the office capable of depositing checks and rent at that time. Following his discovery, Gage confronted Ricke about the deposit. Conflicting evidence was presented at trial about the substance of that conversation. Gage terminated Ricke after the conversation and reviewed the Gage Management records.

During his investigation, Gage discovered accounting discrepancies dating back to June 2009. He discovered that when an employee received collection checks from the law firm and cash rent payments from tenants, the collection checks were deposited in satisfaction of rent payments, and current tenants' rent payments made in cash were not applied toward their accounts.

The following example illustrates how the scheme worked, as provided in the State's Exhibit 2. A tenant pays the $500 monthly rent due to Gage Management in cash. Around the same time, the collection firm sends Gage Management a check in the

amount of $300. The employee takes $200 in cash from the monthly rental payment and the $300 collection check and deposits both as rent paid by the tenant. The employee then diverts to her personal use the remaining $300 cash paid by the tenant.

At trial, Gage testified the discrepancies, like the one above, were based on transactions generated under Ricke's account in PropertyBoss. He also testified he was familiar with Ricke's signature and he recognized her signature on the deposited collection checks. Gage discovered that more than $25,000 had been stolen.

*Charges and sentencing*

Ricke was initially charged with theft by obtaining or exerting unauthorized control over property or services valued at least $1,000 but less than $25,000 in violation of K.S.A. 21-3701(a)(1), (b)(3) (now codified in K.S.A. 2015 Supp. 21-5801). The charges spanned a time period from June 1, 2011, to November 21, 2011.

At the conclusion of the preliminary hearing, the State moved to amend two aspects of the information: the date range and the value of the theft. The district court granted permission stating, "And the amendment would only change the beginning date from June the 1st, 2011, to June the 1st, 2009. And then, of course, the concluding date is November the 21st, 2011." The district court further stated the amended information would show the value of the property or services was at least $25,000 but less than $100,000, thus raising the severity level of the crime. The district court directed the State to "file an amended [information] reflecting all these changes." The district court bound Ricke over "on the Amended information on the crime of theft of property from $25,000 to $100,000."

4

The amended information filed by the State changed the amount and dates of the theft, as anticipated, but also charged Ricke with theft by deception under K.S.A. 21-3701(a)(2) rather than theft by unauthorized control under K.S.A. 21-3701(a)(1).

At trial, the parties did not specifically mention or argue either "theft by deception" or "theft by unauthorized control." Instead, the parties vaguely referred to Ricke's acts as "theft" or "embezzlement." After the State rested, Ricke moved for an acquittal claiming the State failed to make a prima facie case that she was "guilty of committing these thefts, just based on the information given." The State responded that a prima facie case established "that the defendant exerted unauthorized control over property of Gage Management, with the intent to permanently deprive them of upwards of $25,000." The district court denied the motion, finding sufficient evidence to establish a prima facie case—apparently of theft by unauthorized control.

After the evidence was presented, the jury was instructed on theft by unauthorized control, and its verdict form related solely to theft by unauthorized control. No mention was made in the jury instructions or on the verdict form of theft by deception. The jury found the requisite elements met and convicted Ricke of theft by exerting unauthorized control of property totaling between $25,000 and $100,000.

The sentencing guidelines journal entry of judgment indicates the jury found Ricke guilty of "theft" in violation of "K.S.A. 21-5801(a)(2), (b)(2)," (theft by deception) of property totaling between $25,000 and $100,000, a severity level 7, nonperson felony. The district court sentenced Ricke to 12 months' imprisonment, suspended the sentence, and ordered Ricke to serve 24 months' probation.

Ricke timely appeals, raising two issues: that the record does not contain sufficient evidence of theft by deception, and that the district court erred in submitting the

5

amount of loss to the jury as a special question on the verdict form rather than in the elements instruction.

*Does Ricke allege a defect in the charging document?*

Ricke's dispositive claim on appeal is that the record fails to show sufficient evidence to support her conviction of theft by deception. Before we address that issue, however, we address some preliminary issues raised by the State.

The State attempts to recharacterize the issue on appeal, contending Ricke is or should be claiming a defect in the charging document. But Ricke makes no claim that the information's count of theft by deception has missing, inadequate, or incorrect elements. Nor does she claim any discrepancy between the charge and the instructions or verdict. Her sole claim, instead, is that the State's trial evidence proved a violation of a different subsection of the criminal theft statute than the one charged.

Because Ricke never raised on appeal the discrepancy between the charge and the instructions or any defect in the charging document itself, we must analyze the case on the terms that the parties argued it. See *State v. Laborde*, 303 Kan. 1, 2, 7, 360 P.3d 1080 (2015) (reversing Court of Appeals for "improperly open[ing] a door to an analysis of an issue that was not before it" by ruling on invited error doctrine that parties had not raised). Ricke's issue is solely the sufficiency of the evidence.

We do not agree that the State actually charged Ricke with theft by unauthorized control. The State is bound by the wording of its charging document, as the Kansas Supreme Court has recently reaffirmed in another context:

> "A jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous. The reason for this is because the charging instrument

6

sets out the specific offense alleged to inform the defendant of the nature of the accusation, to permit the development of a defense to meet that accusation, and to protect against conviction based on facts not contemplated in the accusation. Accordingly, the State is bound by the wording of its charging document, and the prosecution and district court must use caution in conforming the jury instructions to the charges." *State v. McClelland*, 301 Kan. 815, Syl. ¶ 4, 347 P.3d 211 (2015).

It is well established that the State has the duty to properly charge a defendant and that the evidence at trial must prove the crime charged:

"The State has the responsibility to appropriately charge the accused with the crime it believes the accused has committed. If the evidence introduced at trial does not support a conviction of the offense charged, the accused cannot be found guilty of some other offense which the State did not see fit to charge. Here, the State did not prove the charges it brought against Houck and, therefore, the convictions of aggravated arson must be reversed." *State v. Houck*, 240 Kan. 130, 136, 727 P.2d 460 (1986).

See *State v. Dickson*, 275 Kan. 683, 693-95, 69 P.3d 549 (2003); *State v. Schad*, 247 Kan. 242, 246, 795 P.2d 406 (1990); *State v. McMannis*, 12 Kan. App. 2d 464, 466, 747 P.2d 1343 (1987), *rev. denied* 242 Kan. 905 (1988). Thus a conviction cannot be upheld when the State fails to prove the offense charged, even if the evidence establishes some other offense the State did not charge. *Houck*, 240 Kan. at 136.

*Was the amendment to theft by deception a mere mistake and thus ineffective*?

The State also claims the amendment to theft by deception was a mistake and that Ricke should have known the State intended to charge her with theft by unauthorized control. The State contends that the information was effectively amended at the moment the court approved the proposed amendments and equates its mistake to a failure to memorialize the orally amended information, which can be remedied even after the trial is completed. See generally *State v. Dunn*, 304 Kan. __, 375 P.3d 332, 352 (2016), citing

7

*State v. Rasch*, 243 Kan. 495, 501, 758 P.2d 214 (1988) (allowing journal entry memorializing earlier oral amendment to be filed pretrial); *State v. Nunn*, 244 Kan. 207, 224, 768 P.2d 268 (1989) (extending *Rasch* holding to cover journal entry filed after trial); *State v. Switzer*, 244 Kan. 449, 456-57, 769 P.2d 645 (1989) (allowing oral amendment to be validated by postappeal nunc pro tunc order). These cases recognize that failure to properly memorialize a properly amended complaint does not constitute reversible error, but they do not support the State's argument that a mistaken amendment is ineffective.

Our objective review of the facts of record does not show that the amendment to theft by deception was a mistake. At the preliminary hearing, when the State orally moved to amend the information, neither the parties nor the district court specified whether Ricke was being bound over on a crime of theft by unauthorized control or theft by deception. But the State appears to have argued theft by deception, in stating:

> "At this point in time the State believes that we have proved that the deceptive techniques used by the defendant, as well as the linking of them to her handwritten receipts to tenants that the cash was—was received, as well as the endorsing of the improper checks to the improper accounts, show that it is through deception that Erica C. Ricke had defrauded Gage Management of this amount of money, which then caused David Gage to have to pay back through his own—through his own means."

No mention was made of theft by unauthorized control. The district court mentioned "control" in finding "probable cause to believe that Erica C. Ricke committed these crimes. I make that finding on the testimony of Mr. Gage and also for the control that Ms. Ricke had over these—these operations." But both "theft by deception" and "theft by unauthorized control" include "control" over property.

After considering the testimony and the arguments, the district court held that it was "compelled to bind the defendant over on the Amended Information on the crime of

8

theft of property from $25,000 to $100,000." The district court required the State to file the amended information prior to arraignment, and the State did so, charging Ricke with theft by deception. Ricke was thus arraigned on the charge filed in the amended information—theft by deception.

If the State erred in amending to theft by deception, the record might reflect subsequent efforts by the State to try to rectify that error. But the record shows no such efforts. The State never moved to amend the charge from theft by deception, either orally or in writing. Nor does the State contend the instructions on theft by unauthorized control constitute a constructive amendment. See *State v. Vaughn*, No. 90,795, 2004 WL 1878316, at *5 (Kan. App. 2004) (unpublished opinion) (finding that allowing constructive amendment *sua sponte* by the court would render meaningless the procedural requirements established for amendment of charging instruments), *rev. denied* 278 Kan. 851 (2004). The State failed to file a motion for nunc pro tunc even after the journal entry reflected Ricke's conviction for theft by deception. Accordingly, an objective review of the record does not support the conclusion that the amendment to theft by deception was a mistake.

But even if the record clearly showed that the amendment was a mistake, it was a binding mistake. Our law does not require a defendant to read the State's mind while ignoring the hard print of the amended information; instead, "the State is bound by the wording of its charging document." *McClelland*, 301 Kan. 815, Syl. ¶ 4. The wording of the charging document in this case is the amended information which charged Ricke with theft by deception.

*Was the amendment to theft by deception outside the State's authority?*

The State next argues that despite the plain language of the amended information to the contrary, Ricke was really charged with theft by unauthorized control. It reaches

9

this conclusion by arguing that it had permission to amend only the dates and the amounts in the information so any other change was ultra vires.

In support of this argument the State cites K.S.A. 22-3201(e), which provides: "The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." The judge thus had statutory authority to allow an amendment to the information which did not charge a new crime or substantially prejudice defendant's rights. The State does not discuss whether theft by unauthorized control and theft by deception are different crimes, nor does it discuss whether Ricke's substantial rights were prejudiced.

The State focuses instead on the language stating a district court "may permit" the State to amend an information and argues that any change not expressly permitted by the district court is prohibited. But the State fails to cite any authority in support of that conclusion. Failure to support a point with pertinent authority or show why it is sound, despite a lack of supporting authority, is akin to failing to brief the issue, and an issue not briefed by the appellant is deemed waived and abandoned. *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013); see Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) (appellant's brief must include "[t]he arguments *and authorities* relied on" [Emphasis added.]).

We do not read the statute so narrowly, given the broad discretion granted to the district court and to the prosecution in amending before trial. Our Supreme Court has held: "Whether to allow the amendment of a complaint before trial is subject to the district court's discretion. This court consistently has given the State considerable latitude in amending a complaint prior to trial." *State v. Bischoff*, 281 Kan. 195, Syl. ¶ 8, 131 P.3d 531 (2006). "Prior to trial, the prosecution is given wide discretion in amending the information as to form and substance. *State v. Smith*, 225 Kan. 796, 798, 594 P.2d 218

10

(1979)." *State v. Foy*, 227 Kan. 405, 408, 607 P.2d 481 (1980). Accordingly, we do not find the amendment to theft by deception to be outside the State's authority.

*Does sufficient evidence support a conviction of theft by deception?*

Next, we turn to Ricke's sufficiency of the evidence claim. When the sufficiency of evidence is challenged in a criminal case, we review all the evidence in the light most favorable to the prosecution. The conviction will be upheld if we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. In determining whether there is sufficient evidence to support a conviction, we do not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. *State v. Kendall*, 300 Kan. 515, 523, 331 P.3d 763 (2014).

Ricke concedes that the evidence in the record, taken in the light most favorable to the State, supports a conviction of theft by unauthorized control but *not* a conviction of theft by deception. Ricke cites *State v. Rios*, 246 Kan. 517, 792 P.2d 1065 (1990), which provides an analogy to illustrate the differences between embezzlement and theft by deception. The State contends that *Rios* no longer represents the law in Kansas because (1) the legislature amended the definition of "deception," and (2) our Supreme Court has recently addressed what the State must prove to establish theft by deception in *Laborde*.

The State correctly argues that the legislature has amended the definition of "deception." See K.S.A. 2015 Supp. 21-5111(e). But that change has no impact on this case. As of June 1, 2011, the date Ricke committed her crime, the applicable version of the statute was K.S.A. 2010 Supp. 21-3110(5). That same language was in effect when our Supreme Court decided *Laborde*.

In June 2011, theft was defined in relevant part as:

11

"(a) Theft is any of the following acts done with intent to permanently deprive the owner permanently of the possession, use or benefit of the owner's property:

(1) Obtaining or exerting unauthorized control over property;

(2) obtaining by deception control over property." K.S.A. 21-3701.

*Laborde* explained the important distinction between theft by deception and theft by unauthorized control:

"Theft by deception sets out different elements that the State must prove than theft by unauthorized control. Theft by deception demands a specific kind of proof from the State. The statutory language demonstrates clearly that the legislature intended to require the State to prove that the intended victim 'was actually deceived and actually relied upon the false representation in order for the defendant to be found guilty of theft by deception.' *State v. Finch*, 223 Kan. 398, 402, 573 P.2d 1048 (1978). The statutory phrase 'by deception' indicates an agency or instrumentality as a causative factor. The State must prove that the defendant 'obtained control over another's property by means of a false statement or representation.' 223 Kan. at 404." Laborde, 303 Kan. at 6.

*Laborde* stated the following elements of theft by deception:

"In order to establish the offense of theft by deception, the State must prove:  (1) The victim was the owner of the property, (2) the defendant obtained control over the property by means of a false statement or representation which deceived the property owner and upon which he or she relied, and (3) the defendant intended to deprive the owner permanently of the use or benefit of the property." *Laborde*, 303 Kan. 1, Syl. ¶ 4.

These elements apply here, as the State concedes.

*Laborde*'s facts are strikingly similar. There, as here, the State charged the defendant with one statutory theory of theft, but the jury convicted the defendant under instructions setting out a different theory of theft:

12

- The initial complaint charged Laborde with one count of felony theft by deception;

- the State then filed an information charging Laborde with theft by deception;

- an amended information repeated the theft by deception charge but changed the owner of the property;

- at trial, both parties submitted jury instructions setting out the elements of theft by unauthorized control;

- the jury verdict found Laborde guilty of "felony theft"; and

- the journal entries of trial and sentencing both specified conviction under K.S.A. 21-3701(a)(2), theft by deception.

In *Laborde*, as here, the sole issue on appeal was whether sufficient evidence supported the crime charged—theft by deception.

*Laborde* teaches that for a conviction of theft by deception, the evidence must show the defendant gained control over the property by means of misrepresentations. Misrepresentations made after the defendant gains such control are insufficient. Laborde and Price lived together for a time. When Price returned to the house with a police escort to retrieve his military dress and other gear, Laborde lied to him about the location of those items and Price was never able to retrieve his belongings. Our Supreme Court found:

> "Giving away or selling Price's property may have been theft by exercising unauthorized control of the property, but lying about what she had done with the property did not, by itself, constitute theft. She already had control over the property which was located in the house and on the land that she occupied; she did not gain control over the property by means of subsequent misrepresentations." 303 Kan. at 7.

The Supreme Court found the evidence insufficient to convict Laborde of theft by deception.

Our review of the record in this case shows no evidence that Ricke obtained control over Gage Management's property by means of a false statement or representation, thus the second element of theft by deception is not met. No evidence suggests that Ricke obtained by any falsehood either her initial employment with Gage Management or her position in 2007 or 2008 which granted her access to the funds which she diverted. See *Laborde*, 303 Kan. 1, Syl. ¶ 4; *State v. Boor*, No. 112,539, 2016 WL 97856, at *4 (Kan. App. 2016) (unpublished opinion) (reversing because "for a theft by deception to have occurred . . . Boor would have had to present a deception or misrepresentation relied upon by [her employer] in initially granting her access to the deposits"). Nor does the evidence show that Ricke obtained control over Gage Management's property by means of any false statement or representation on a case-by-case basis when using her position to steal money from Gage Management.

The State contends that Ricke's act of not recording the settlement checks in the correct account constitutes gaining control over that property by means of Ricke's false representation that the law firm had not sent a collections check. But the State does not show how Ricke's silence could somehow be construed as "a false statement or representation." Even assuming Ricke's silence was a false statement or representation, the State makes no argument that Ricke obtained control over the property by means of those falsehoods which "deceived the property owner and upon which he or she relied," as the statute requires.

The facts of this case therefore do not support a conviction of theft by deception pursuant to K.S.A. 21-3701(a)(2). Accordingly, we must reverse Ricke's conviction. We find it unnecessary to reach Ricke's argument that the district court erred in submitting the amount of loss to the jury as a special question on the verdict form rather than in the elements instruction.

Reversed.